OPINION
{¶ 1} Defendant, Anthony Bolling, appeals from his conviction and sentence for rape and felonious sexual penetration.
 {¶ 2} This is a child sexual abuse case. We will refer to the victim as C.D. The State's evidence demonstrates that in 1995, just a few months after C.D.'s father committed suicide, C.D.'s mother became romantically involved with Defendant. In August 1995, Defendant moved into an apartment with eight year old C.D. and her mom at Covey Run in Miamisburg. They lived together at that location until 1997. Defendant assumed a parental role in relation to C.D. and punished her by spanking whenever she disobeyed him. Whenever C.D.'s mother was at work or away from the home for other reasons, Defendant would often watch C.D. During those times, and whenever he was alone with C.D., Defendant repeatedly sexually abused C.D. by inserting his fingers into her vagina. At times this abuse occurred every couple of days and at other times once per week or once per month. Defendant warned C.D. not to tell anyone about the abuse or he would put that person in jail or kill them.
 {¶ 3} Sometime in 1997, when C.D. was ten years old, she and her mother and Defendant moved into an apartment at Indian Creek in West Carrollton. Defendant's sexual abuse of C.D. continued at that residence and occurred about once per month. The sexual abuse finally ended in 1999 or 2000 when C.D. was twelve or thirteen. C.D. first disclosed the abuse during an argument with her mother on November 19, 2002. In January 2003, at the request of police, C.D. recorded a telephone call she received from Defendant during which Defendant made incriminating statements.
 {¶ 4} Defendant was indicted on four counts of forcibly raping a child under thirteen, R.C. 2907.02(A)(1)(b), and one count of felonious sexual penetration of a child under thirteen by force, R.C. 2907.12(A)(1)(b). Following a jury trial, Defendant was found guilty on all counts. The trial curt sentenced Defendant to life imprisonment on each count, and ordered that two of the counts be served consecutively to the other three.
 {¶ 5} Defendant timely appealed to this court from his conviction and sentence.
First Assignment of Error
 {¶ 6} "The trial court erred in denying defense the opportunity to present evidence concerning the complainant's lack of fear of defendant and hostility towards defendant, in violation of defendant's rights pursuant to article i, section 16 of the ohio constitution and the 6th and 14th amendments to the united states constitution."
 {¶ 7} Defendant argues that the trial court abused its discretion and denied him a fair trial when it refused to admit lay opinion testimony offered by himself and two of his witnesses, Andrea Banks and Sean Hasty, in order to show (1) that C.D. was not fearful of Defendant and (2), that C.D. did not approve of Defendant. According to Defendant, this evidence was relevant to counter the "force" element of the sexual assault charges against him. Defendant additionally complains that the trial court's evidentiary rulings were biased and unfairly inconsistent, pointing out that the court allowed one of the State's witnesses, Det. Charles, to offer lay opinion testimony on C.D.'s demeanor/emotional state, over Defendant's objections.
 {¶ 8} With respect to the admission or exclusion of evidence, the trial court has broad discretion and its decision in such matters will not be disturbed by a reviewing court absent an abuse of discretion that has caused material prejudice. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, un-conscionable attitude on the part of the court. State v. Adams
(1980), 62 Ohio St.2d 151.
 {¶ 9} Evid.R. 701 governs opinion testimony by lay witnesses and provides:
 {¶ 10} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 11} Consistent with Evid.R. 701, a lay witness may testify about another's demeanor or emotional state if the testimony is based upon personal observations and first-hand perceptions. State v. Kovac,150 Ohio App.3d 676, 691, 2002-Ohio-6784. The trial court refused to permit Defendant or his witnesses to offer a conclusion or opinion regarding whether "C.D. was fearful of Defendant," or whether "C.D. approved or disapproved of Defendant."
 {¶ 12} The State argues that the reason the court ruled as it did is because Defendant did not lay a proper foundation under Evid.R. 701 for the lay opinion he sought to elicit. In other words, Defendant did not offer any testimony relating specifically what it was that the witness personally observed about C.D.'s actions and behavior that would rationally lead to a conclusion or opinion that C.D. was not fearful of Defendant or did not approve of Defendant. For lay opinion testimony to be admissible, the witness must have firsthand knowledge of the subject of the testimony and the opinion must be one a rational person would form based upon the observed facts. State v. Sibert (1994),98 Ohio App.3d 412.
 {¶ 13} In contrast to Defendant's lay opinion testimony that the trial court excluded, the State claims that a proper foundation was laid for the opinion of its own witness, Det. Charles, that C.D. was "scared to death." The prosecutor specifically asked Det. Charles to describe C.D.'s demeanor when she entered the interview room. Det. Charles testified that "Her face was white. She was just obviously scared to death."
 {¶ 14} Det. Charles' opinion that C.D. was scared to death was based upon his personal observation of her, and his opinion was one that a rational person could form after seeing C.D.'s face and witnessing her demeanor. Likewise, Det. Charles' opinion that C.D.'s demeanor during their interview was not unusual, when compared with other child victims who have alleged sexual abuse, was also properly admitted under Evid.R. 701. That opinion was rationally based upon Det. Charles' personal observation of C.D. during their interview and his experience as a police officer in interviewing some twenty-five to fifty other child sex abuse victims, and being familiar with their common behavioral characteristics.
 {¶ 15} After closely examining this record, we reject the State's argument that the lay opinion testimony offered by Defendant's witnesses was inadmissible because Defendant sought to elicit a conclusion or opinion without first laying a proper foundation for such by relating the witnesses' personal observations of C.D.'s actions and behavior. Andrea Banks was asked if she "saw anything in C.D.'s behavior" that would lead her to believe that C.D. was fearful of Defendant. The prosecutor's objection to that question was improperly sustained. The question invited the witness to relate her personal observations of C.D.'s behavior which would serve as a proper foundation for the witness' conclusion or opinion regarding whether C.D. feared Defendant.
 {¶ 16} Similarly, the trial court improperly sustained the prosecutor's objection when Defendant was asked whether, "from what C.D. said and what he heard her say, and what he observed with his own senses," C.D. approved or disapproved of him. This question called for a conclusion or opinion, but one that was rationally based upon the witnesses' own personal observations of C.D.'s actions and speech, which provides a proper foundation for the witness' conclusion or opinion regarding whether C.D. approved or disapproved of him.
 {¶ 17} We agree with Defendant that the trial court abused its discretion when it excluded lay opinion testimony offered by him and his witnesses regarding C.D.'s lack of fear and disapproval of Defendant, while at the same time admitting lay opinion testimony to the contrary from a state's witness regarding C.D.'s demeanor and emotional state during her police interview. Nevertheless, we conclude that the error was harmless beyond a reasonable doubt. The defense witnesses were permitted to testify about their personal observations of the relationship between C.D. and Defendant. That evidence demonstrated the same proposition that Defendant sought to prove via lay opinions from these same witnesses.
 {¶ 18} Andrea Banks described C.D.'s and Defendant's relationship as one of both love and hate, in which at times they were nice, hugging each other, and at other times were fighting, using foul language and calling each other names. Sean Hasty and Debbie Stillwell described a similar relationship, as did Defendant's brother, Pat Bolling, who noted that C.D. was either being nice to Defendant or she was up in his face wanting him out of her home like she ran the place. This evidence that C.D. was at times combative towards Defendant supports a reasonable inference that C.D. was not fearful of Defendant, which is the same proposition Defendant tried to demonstrate via lay opinion testimony from some of these same witnesses.
 {¶ 19} Defendant was permitted to testify that he talked to Andrea Banks in the presence of C.D. about marrying C.D.'s mother but he decided not to talk to C.D. about it because he could tell from her attitude that she was not in favor of it. Furthermore, after hearing about the marriage plans, C.D. began treating Defendant differently than she ever had before. C.D. would look at Defendant and then look away and ignore him. This evidence that C.D. disfavored Defendant marrying her mother supports a reasonable inference that C.D. did not completely approve of Defendant, which is the same proposition Defendant tried to prove via his lay opinion testimony. In short, because the same evidence Defendant sought to introduce via lay opinion testimony was admitted via other means, and permitted Defendant to ask the jury to draw the same conclusions, the trial court's error in excluding that lay opinion testimony was harmless error at best.
 {¶ 20} The first assignment of error is overruled.
Second Assignment of Error
 {¶ 21} "Appellant's conviction of felonious sexual penetration is contrary to the weight and sufficiency of the evidence."
Third Assignment of Error
 {¶ 22} "Appellant's conviction on counts 1-4 are contrary to the weight and sufficiency of the evidence."
 {¶ 23} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259:
 {¶ 24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 25} With respect to his conviction for felonious sexual penetration in violation of R.C. 2907.12(A)(1)(b), Defendant argues that the evidence presented is legally insufficient to prove that this offense occurred before the statute defining that offense was repealed. We disagree.
 {¶ 26} Prior to September 3, 1996, R.C. 2907.12(A)(1)(b) provided:
 {¶ 27} "No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 28} With the passage of Senate Bill 2, R.C. 2907.12 was repealed effective September 3, 1996, and the former conduct constituting that offense was redefined as "sexual conduct" and included in the new and current rape statute. See: R.C. 2907.01(A) and R.C. 2907.02(A)(1)(b).
 {¶ 29} The indictment alleges that Defendant violated R.C.2907.12(A)(1)(b) between August 1, 1995 and September 2, 1996, dates during which that statute was still in effect. Both C.D. and her mother testified that Defendant moved in with them at Covey Run apartments in August 1995. C.D.'s mother further testified that she went to work in October 1995 for the United States Postal Service and worked 3:00 to 7:00 p.m. During those times, C.D.'s grandmother would pick C.D. up after school and drop C.D. off at home where Defendant would watch her until C.D.'s mother arrived home. Defendant acknowledged that there were times when he was home alone with C.D. between October 1995 and September 2, 1996.
 {¶ 30} C.D.'s testimony established when the alleged sexual abuse occurred. According to C.D., after they all moved into Covey Rum apartments and her mother began working and Defendant would watch her, Defendant began at first rubbing her breasts and her "private area" over her clothing. Defendant then began putting his hand in her pants or would remove her pants and then insert his fingers into her vagina. This abuse occurred repeatedly: sometimes every couple of days, sometimes once a week, other times once a month, depending upon how frequently Defendant was at home alone with C.D.
 {¶ 31} Although C.D. could not recall exact dates when the sexual abuse occurred, when construed most strongly in favor of the State the evidence is clearly sufficient to prove that the sexual abuse began after C.D.'s mother began working in October 1995, and that a violation of R.C. 2907.12 thus took place one or more times prior to September 2, 1996. Viewing the evidence in a light most favorable to the State, a reasonable trier of facts could find all of the essential elements of R.C. 2907.12(A)(1)(b) proven beyond a reasonable doubt. Defendant's conviction for felonious sexual penetration is supported by legally sufficient evidence.
 {¶ 32} With respect to his conviction on four counts of rape in violation of R.C. 2907.02(A)(1)(b), Defendant argues that the evidence is legally insufficient to prove that more than two rapes occurred, one at Covey Run apartments and one at Indian Creek condos. We disagree.
 {¶ 33} R.C. 2907.02(A)(1)(b) provides:
 {¶ 34} "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
"The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 35} "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 36} The indictment and the bill of particulars filed by the State alleged that Defendant committed rape in violation of R.C. 2907.02(A)(1)(b) between September 3, 1996, and December 31, 1996, and committed an additional violation in each of the next three calendar years: 1997, 1998 and 1999. Ordinarily, the date of the offense is not an essential element of the offense. State v. Sellards (1985), 17 Ohio St.3d 169. Consequently, an allowance for inexactitude in the date and time of the offense is permissible, and must be made especially in cases involving the sexual abuse of young children where there are several instances of abuse spread out over an extended time period. State v. Barnecut (1988),44 Ohio App.3d 149; State v. Mundy (1994), 99 Ohio App.3d 275. Such is the case here.
 {¶ 37} C.D. was eight years old when the abuse began and twelve or thirteen when it finally stopped. She could not remember exact dates when the abuse occurred because it had happened too often. Thus, the State was not able to provide more specific dates when the offenses occurred. Defendant does not argue that the imprecision regarding the dates of the offenses prejudiced his defense. Although Defendant filed a notice of alibi consisting of time periods when he worked at different jobs or was out of town, he did not deny that he was alone at times with C.D. during the relevant time periods alleged. Instead, Defendant claimed that the sexual abuse never happened and that C.D. fabricated those allegations to stop Defendant from marrying her mother.
 {¶ 38} The evidence presented by the State, particularly the testimony by C.D. and her mother, established that Defendant, C.D. and her mother all lived together at Covey Rum apartments from August 1995 to January 1997. Defendant's alleged sexual abuse of C.D. started after her mother went to work in October 1995 and occurred on a regular basis. According to C.D., Defendant inserted his fingers into her vagina every couple days, or once every week or once every month, depending on how frequently Defendant was alone with C.D. This evidence, if believed, and when construed in a light most favorable to the State, is legally sufficient to prove that Defendant raped C.D. at lease once between September 3, 1996 and December 31, 1996, as charged in count one of the indictment.
 {¶ 39} With respect to counts two, three and four alleging that Defendant raped C.D. at least one time in 1997, 1998 and 1999, respectively, the State's evidence demonstrates that Defendant, C.D. and her mother moved in January 1997 from Covey Run apartments to Indian Creek condos where they all lived together until May 2000. During that time C.D. either stayed home alone or Defendant would watch her whenever C.D.'s mother was at work. Defendant continued to sexually abuse C.D. at Indian Creek condos in the same way he had done at Covey Run apartments. The abuse occurred at Indian Creek approximately once every month during that three year period, except for three months in early 1998 when Defendant lived with his sister. The abuse finally stopped when C.D. was twelve or thirteen years old. She turned thirteen on January 6, 2000. This evidence, if believed, and when construed in a light most favorable to the State, is legally sufficient to prove that Defendant raped C.D. at least one time in each of the years 1997, 1998 and 1999, as charged in counts two, three and four of the indictment.
 {¶ 40} Defendant also argues that the evidence presented by the State was insufficient to prove that he used force or threat of force in committing the rapes. Force is defined in R.C. 2901.01(A)(1) as any violence, compulsion, or constraint physically exerted by any means upon a person or thing.
 {¶ 41} Defendant assumed a role of parental authority over eight year old C.D. and would punish her by spanking for disobeying him. C.D. viewed Defendant as a "father figure." With the filial obligation of obedience to a parent, the same degree of force and violence is not required upon a person of tender years as would be required were the parties more equal in age, size and strength. State v. Eskridge (1988), 38 Ohio St.3d 56. In situations involving the sexual assault of a child by a parent, the force used need not be overt and physically brutal, but can be subtle and psychological. As long as it is shown that the rape victim's will was overcome by fear or duress, the force element of rape is established.Id. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose. Id. This same reasoning also applies with equal force when a child is sexually abused by a non-parent who is in a position of authority, such as a stepfather or babysitter. State v. Dye, 82 Ohio St.3d 323, 1998-Ohio-234, State v.Marrs (June 28, 2002), Montgomery App. No. 18903, 2002-Ohio-3300.
 {¶ 42} C.D. testified about the sexual abuse that occurred at Covey Run apartments, noting that Defendant had warned her not to tell anyone about the abuse because if she did he would put that person in jail or kill them. C.D. believed Defendant. Moreover, it matters not whether that threat was made before or after the abuse. Marrs, supra. Furthermore, there were times during the sexual abuse when C.D. told Defendant to stop or tried to push him away to no avail. Defendant simply ignored C.D. and continued abusing her. C.D. felt powerless against Defendant, that he was going to do what he wanted to do and there was nothing she could do about it. This evidence, if believed, and when construed in a light most favorable to the State, is legally sufficient to prove that Defendant used force or threat of force in committing the rapes.
 {¶ 43} Finally, Defendant argues that his convictions for rape are against the manifest weight of the evidence because C.D.'s testimony is not credible.
 {¶ 44} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 45} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 46} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts, the jury here, to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson
(August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 47} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 48} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict.State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 49} Although Defendant states in conclusory fashion that C.D.'s testimony is not credible, the credibility of any witness and the weight to be given to their testimony are matters for the trier of facts to resolve. DeHass, supra. In addition to C.D.'s testimony, Defendant acknowledged that there were occasions throughout the relevant time periods when he was alone with C.D. Moreover, during Defendant's phone call to C.D. in January 2003, which was recorded, Defendant made incriminating statements and attempted to talk C.D. out of prosecuting him. The jury in this case did not lose its way simply because it chose to believe C.D., rather than Defendant, which it was entitled to do. In that regard we note that the trial court, at sentencing, commented upon the fact that Defendant committed perjury at trial in an effort to avoid responsibility for these crimes.
 {¶ 50} In reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's convictions are not against the manifest weight of the evidence.
 {¶ 51} The second and third assignments of error are overruled.
Fourth Assignment of Error
 {¶ 52} "The trial court erred in overruling appellant's motion for a psychiatric and/or psychological evaluation of the complainant and in overruling appellant's motion for mental health records of the complainant."
 {¶ 53} Defendant argues that the trial court erred in denying his motion for a psychiatric/psychological examination of C.D. or, in the alternative, access to her mental health records. Defendant proposed using such information to demonstrate that C.D. was troubled and had been severely traumatized by certain events in her life, including the suicide of her father, which casts doubt upon her credibility and particularly her allegations of sexual abuse.
 {¶ 54} A defendant does not have a right to compel a rape victim to undergo a psychiatric/psychological evaluation. State v. Gray (June 28, 1995), Hamilton App. No. C-940276. A trial court may, in its discretion, order such an examination, but it should do so only in exceptional circumstances and only when necessary to further the ends of justice.Id.; State v. Stutts (Jan. 2, 1991), Lorain App. No. 90CA004879. No such showing has been made in this case.
 {¶ 55} C.D. is presumed to be competent per Evid.R. 601(A), and Defendant did not present any evidence of incompetency to overcome that presumption. Gray, supra. Furthermore, using the results of a mental exam to challenge C.D.'s credibility is improper. Id. Expert testimony is not admissible for the purpose of attacking the veracity of the victim's allegations. State v. Moreland (1990), 50 Ohio St.3d 58; State v. Boston
(1989), 46 Ohio St.3d 108. To use the results of a mental exam for that purpose would usurp the jury's function of determining the credibility of the witnesses. Gray, supra.
 {¶ 56} With respect to C.D.'s mental health records, the State made it clear that it was not aware whether any such records even existed and, in any event, it was not in possession or control of such records. Defendant is not entitled to records that are not in the possession, custody or control of the State. State v. Boehm (Dec. 31, 1997), Montgomery App. No. 16335. No abuse of discretion has been demonstrated on the part of the trial court in denying Defendant's motion for a mental examination of C.D. or her mental health records.
 {¶ 57} The fourth assignment of error is overruled.
Fifth Assignment of Error
 {¶ 58} "Appellant was denied a fair trial as a result of ineffective assistance of counsel."
 {¶ 59} Although Defendant's appellate counsel raises an ineffective assistance of trial counsel issue, claiming that trial counsel performed in a deficient manner in several respects, he advances that claim only in the form of an "Anders" argument, Anders v. California (1967),386 U.S. 738, conceding that the claim has no merit. Where, as here, Defendant's appellate counsel has found one or more issues worthy of appellate review, it is not appropriate to discuss or present non-meritorious issues, as if this were an Anders brief when it is not.State v. Padgett (June 30, 2000), Greene App. No. 99CA87. We decline to review what appellate counsel essentially advances as non-error.
 {¶ 60} The fifth assignment of error is overruled.
Sixth Assignment of Error
 {¶ 61} "Appellant was denied a fair trial as a result of cumulative effects of errors."
 {¶ 62} Defendant argues that the cumulative effect of the multiple errors that occurred during the trial deprived him of a fair trial. Statev. DeMarco (1987), 31 Ohio St.3d 191. In reviewing Defendant's assignments of error, however, we have not found the existence of multiple errors and hence there is no "cumulative effect."
 {¶ 63} In addition to his previous assignments of error, Defendant complains in "laundry list" fashion about several other alleged errors dealing with the trial court's evidentiary rulings. For instance, during cross-examination of C.D. the trial court would not allow Defendant to question her about whether she had sought or received counseling because of her father's suicide. We agree with the trial court's ruling. Any evidence demonstrating that C.D. blamed Defendant for her father's suicide because she thought Defendant was seeing her mother before her father died would be relevant to show that C.D. may have disliked Defendant and therefore might have had a motive to fabricate these allegations of sexual abuse. The court properly allowed Defendant to ask C.D. whether she blamed Defendant for her father's death, which she denied. Whether C.D. ever sought or received counseling because of her father's suicide, however, is simply not relevant or probative of the issue in this case: whether Defendant inserted his fingers into C.D.'s vagina. The trial court properly excluded that evidence.
 {¶ 64} Defendant also complains because the trial court did not permit him during cross-examination to ask C.D. whether she had ever lied to her mother, or whether she had altered the tape recording of the telephone conversation between Defendant and herself. The credibility of any witness may be attacked by any party. Evid.R. 607(A). However, a questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact. Evid.R. 607(B); State v. Gillard (1988), 40 Ohio St.3d 226. This rule prevents counsel from testifying and asserting as fact mere innuendo that is included within a question when there is no reasonable belief that a factual predicate exists for the implied impeaching fact. Weissenberger, Ohio Evidence Courtroom Manual (2005), p. 218.
 {¶ 65} Rather than allowing defense counsel to engage in a mere fishing expedition in front of the jury, the trial court properly required Defendant to first inquire of C.D. outside the presence of the jury whether she had ever lied to her mother or altered the tape, in order to determine if any good faith basis for asking those questions existed. In any event, we note that defense counsel thoroughly cross-examined C.D. at trial regarding specific instances where she had lied. In addition, the prosecutor asked C.D. during redirect whether she had tampered with the tape recording of the phone conversation between Defendant and herself, prior to turning it over to police.
 {¶ 66} Defendant further complains that the trial court erred in permitting Det. Charles to testify that he told C.D. and her mother that someone who commits this type of crime ordinarily will not confess it to another adult. According to Defendant, the State did not lay a proper foundation for this expert opinion testimony by the witness. Evid.R. 702, 703, 705. A review of the record, however, readily reveals that Det. Charles was not offering an expert opinion. Rather, he was simply testifying about a statement he made to C.D. and her mother in the course of discussing with them the need to have them tape record their phone conversations with Defendant in an effort to obtain a confession from him. In any event, prior to Det. Charles' testimony, Defendant thoroughly explored this issue during cross-examination of both C.D. and her mother regarding taping their telephone conversations with Defendant, including the statement made by Det. Charles to which Defendant now objects.
 {¶ 67} Lastly, Defendant complains about the trial court's ruling preventing him from cross-examining Det. Charles about his decision to erase or tape over his recorded pretrial interviews with two defense witnesses, Tony and Andrea Banks. According to Defendant, Det. Charles' police report left out things favorable to Defendant those witnesses said during their interview with Det. Charles, and by denying an opportunity to cross-examine on this issue, the trial court hindered Defendant's ability to attack Det. Charles' credibility and demonstrate bias.
 {¶ 68} This issue was the subject of a pretrial hearing which disclosed that Det. Charles used the tape recordings of his interviews with Tony and Andrea Banks to refresh his memory when writing his police report. Once that report was completed, including Det. Charles' summary of the statements made by Tony and Andrea Banks, Det. Charles recycled the tapes and taped over the Banks interviews. That was Det. Charles' customary practice. The trial court concluded that there was no evidence of any deliberate intent on Det. Charles part to destroy evidence favorable to the defense. Furthermore, the court concluded that Det. Charles' conduct in destroying the tapes did not deny Defendant access to any favorable evidence because Tony and Andrea Banks had communicated to defense counsel everything they told Det. Charles, including things they claim were left out of Det. Charles' police report.
 {¶ 69} Given that the defense did not lose access to any favorable evidence and was able to present to the jury everything that Tony and Andrea Banks said to Det. Charles, because they testified at trial as defense witnesses, we agree with the trial court that Det. Charles' conduct in not preserving the Banks' pretrial interviews simply wasn't prejudicial to Defendant. It does not tend to prove or disprove Defendant's guilt or innocence, and serves no purpose other than "dirtying up" Det. Charles. Under those circumstances, the trial court acted well within its discretion in determining that the danger of unfair prejudice to the State far outweighed any minimal probative value the evidence might have, and therefore excluded it.
 {¶ 70} No abuse of discretion has been demonstrated in the trial court's evidentiary rulings. The sixth assignment of error is overruled.
Seventh Assignment of Error
 {¶ 71} "The trial court erred in imposing consecutive sentences on the basis of facts determined by the court rather than by the jury."
 {¶ 72} In a motion to supplement his appellate brief, Defendant argues that because the findings the trial court made pursuant to R.C.2929.14(E)(4) in order to support consecutive sentences were neither facts admitted by him nor found by a jury, the sentences violated hisSixth Amendment right to trial by jury and the rule in Blakely v.Washington (2004), 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 andApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed2d 435. Stated differently, Defendant is asking this court to find that part of Ohio's felony sentencing scheme is unconstitutional.
 {¶ 73} Defendant did not raise this issue in the trial court. As a result, any error in that regard has been waived and the issue has not preserved for appellate review. State v. Williams (1977), 51 Ohio St.2d 112;State v. Awan (1986), 22 Ohio St.3d 120; State v. Barnett (Dec. 28, 2004), Mahoning App. No. 02CA65, 2004-Ohio-7211. The fact that Blakely
was not decided until after Defendant's sentencing hearing took place is not significant because the issues reviewed in Blakely were previously reviewed many times by the United States Supreme Court and other federal and state courts. Blakely is only the most recent progeny in a line of cases that includes the seminal case of Apprendi v. New Jersey, supra,
which was decided years before Defendant's sentencing hearing. The issue Defendant is now attempting to raise on appeal under Blakely is essentially the same constitutional argument raised in Apprendi. ThisSixth Amendment contention clearly could have been raised by Defendant in the trial court below. Constitutional rights, like any other rights, may be lost by a failure to assert them at the proper time. State v. Awan
(1986), 22 Ohio St.3d 120. We will not address this constitutional challenge to Ohio's felony sentencing scheme which is being raised for the first time on appeal.
 {¶ 74} The seventh assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. And Donovan, J., concur.