DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Emerson Marc Anderson, appeals from his conviction in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} On September 1, 2005, the Summit County Grand Jury indicted Appellant on three counts of rape, in violation of R.C.2907.02(A)(1)(b), first-degree felonies; and three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), third-degree felonies. Three months later, a supplemental indictment was filed against Appellant for an additional four counts of rape, in violation of R.C. 2907.02(A)(1)(b), first-degree felonies; three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), third-degree felonies; and one count of menacing by stalking, in violation of R.C.2903.211(A), a fourth-degree felony. A second supplemental indictment additionally charged Appellant with a sexual predator specification as to the four counts of rape in the first supplemental indictment. These alleged incidents involved three girls, K.F., R.F., and J.F., all under the age of eleven and occurred during Appellant's extended stay with the family as a guest.
 {¶ 3} Appellant pled not guilty to all of the charges. Prior to trial, Appellee dismissed the original indictment charging three counts of rape and three counts of gross sexual imposition and the sexual predator specification in the second supplemental indictment. A jury trial proceeded only on the charges in the first supplemental indictment. The jury returned guilty verdicts on all the counts: four counts of rape, three counts of gross sexual imposition and one count of menacing by stalking.
 {¶ 4} At sentencing, the trial court merged the three counts of gross sexual imposition into the four counts of rape. Appellant was sentenced to mandatory life prison terms on all four counts of rape and a one year prison term for the menacing by stalking conviction. Additionally, Appellant was classified as a child-victim predator. Appellant's total sentence was three life terms with eligibility for parole after 30 years.
 {¶ 5} Appellant timely appealed, asserting two assignments of error for review. We will address both assignments of error together for ease of review.
 II. First Assignment of Error "APPELLANT'S CONVICTIONS FOR RAPE AND GROSS SEXUAL IMPOSITION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Second Assignment of Error "APPELLANT'S CONVICTION FOR RAPE UNDER COUNT TWO OF THE INDICTMENT WAS BASED UPON INSUFFICIENT EVIDENCE OF THE ELEMENT OF FORCE."
 {¶ 6} In his first assignment of error, Appellant attacks the credibility of the three victims and alleges that the rape and gross sexual imposition convictions were against the manifest weight of the evidence. Appellant's second assignment of error argues that Appellee failed to present evidence of force necessary to sustain a life sentence as to the second count of rape involving K.F. We disagree with both of Appellant's arguments.
 {¶ 7} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a question of law. Id.; State v. Smith (1997), 80 Ohio St.3d 89, 113. Under this construct, the State has failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury. Thompkins, 78 Ohio St.3d at 386; Smith,80 Ohio St.3d at 113.
 {¶ 8} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether the evidence produced satisfies each of the elements of the crime. Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 319. This standard requires no exhaustive review of the record, no comparative weighing of competing evidence, and no speculation as to the credibility of any witnesses. Instead, the appellate court "view[s] the evidence in a light most favorable to the prosecution." Id. "[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 9} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
"A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340.
 {¶ 10} In application, this may be stated as a "[c]ourt will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Lee,158 Ohio App.3d 129, 2004-Ohio-3946, at ¶ 15, quoting State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at *5. Nor is a conviction "against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin, 148 Ohio App.3d 293,2002-Ohio-3410, at ¶ 26, quoting State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *7. Moreover, a conviction may withstand evidence that is susceptible to some plausible theory of innocence. State v.Figueroa, 9th Dist. No. 22208, 2005-Ohio-1132, at ¶ 7, citingJenks, 61 Ohio St.3d at 273.
 {¶ 11} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Lee at ¶ 18, citing Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at *3. Accord Urbin at ¶ 31. In the present case, manifest weight is dispositive on each of the charges of which Appellant was convicted.
 {¶ 12} Appellant was convicted of four counts of rape, three counts of gross sexual imposition and one count of menacing by stalking. However, Appellant only appealed the rape and gross sexual imposition convictions. Accordingly, we will only address these seven convictions, and not the menacing by stalking conviction.
1. Rape and Gross Sexual Imposition — Manifest Weight
 {¶ 13} Appellant was found guilty of four counts of rape, in violation of R.C. 2907.02(A)(1)(b), which provides that "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" includes all of the following:
 "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A).
 {¶ 14} Appellant was also convicted of three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which provides that
 "No person shall have sexual contact with another, not the spouse of the offender; [or] cause another, not the spouse of the offender, to have sexual contact with the offender; * * * when any of the following applies: * * * (4) The other person, or one of the persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
"Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Based on the above definitions, rape and gross sexual imposition are similar crimes: the main difference is rape requires sexualconduct, while gross sexual imposition requires sexual contact.
 {¶ 15} Appellant's brief asserts that the victims were led to fabricate the sexual allegations and points to the lack of physical or medical evidence to support his position that nothing sexual occurred between him and the three victims. The crux of Appellant's argument is the victims' lack of credibility. However, the jury is in the best position to weigh the evidence and is free to believe all, some, or none of the victims' testimony. State v. Smith, 10th Dist. No. 03AP-1157, 2004- Ohio-4786, at ¶ 22. An appellate court may not substitute its judgment for that of the jury on the issue of witness credibility unless it is manifestly clear that the jury lost its way. Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Based upon Appellant's convictions, the jury believed the victims' testimony and there is nothing in the record undermining their credibility. Tactically, Appellant's attempts to attack the credibility of the State's witnesses appear ineffective. See State v. Morrison, 9th Dist. No. 21687, 2004-Ohio-2669, at ¶ 56 (Children rape victims were deemed credible witnesses despite behavioral problems and being prone to lie.). Further, this Court has held that medical evidence is not necessary in a rape conviction. State v. Riffle (1996),110 Ohio App.3d 554, 560. See, also, State v. Hunter (2001), 144 Ohio App.3d 116, 119- 20.
 {¶ 16} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State. The jury heard testimony from Appellee's 15 witnesses, including the three victims, the detective, a social worker and the examining doctor. The record is clear that all three of the victims were under the age of 13 and were not Appellant's spouses. Additionally, all three victims identified Appellant as the perpetrator and each described their sexual assaults.
 {¶ 17} K.F., the oldest victim, testified that the first incident occurred when she was nine years old. K.F. walked past Appellant's bedroom while he was watching pornography. Upon seeing her, Appellant said "Let's watch this." While viewing the pornography, Appellant told K.F. "Let's do this." Appellant proceeded to have K.F. remove her clothing, lie on his bed, and performed oral sex on K.F. for a few seconds. Appellant then had vaginal intercourse with K.F. for a few minutes until K.F. pushed him away and ran out of the room with her clothes. K.F. further testified that Appellant performed oral sex and had vaginal intercourse with her on two other occasions after she turned ten years old. Additionally, Appellant showed K.F. pictures of his penis that he had taken with the camera on his cell phone.
 {¶ 18} K.F. and her mother both testified that K.F. was struggling in school during the time of the sexual conduct and contact. However, K.F.'s grades have improved since she began attending counseling sessions regarding these incidents.
 {¶ 19} Additionally, Carol Anderson, Appellant's mother, recognized a change in K.F.'s behavior during this time. Mrs. Anderson noticed that K.F. was sad, quiet, and angry. Additionally, she noted that K.F. was reluctant to get up and sing in front of the church congregation. Detective Robinson also commented that during the investigation, K.F. was the saddest of the three victims.
 {¶ 20} J.F. was seven years old when Appellant began showing her pictures of his penis on his cell phone. J.F. testified that Appellant "snatched" her from the hallway, took her into his bedroom, removed her clothes and pushed her on the bed. Appellant then spread J.F.'s legs and performed oral sex on her. Additionally, Appellant attempted to have anal sex with J.F. J.F. stated that Appellant would wear yellow, blue and green rings on his penis and that Appellant had also showed her pornography on television.
 {¶ 21} During her interview with the social worker, J.F. also stated that Appellant had licked her breasts. The social worker testified that while J.F. was confused as to the timeline of these events, J.F. clearly knew what sexual conduct and contact had occurred between her and Appellant. J.F.'s parents testified that she is in special education classes for her speech and is very emotional.
 {¶ 22} R.F., the youngest victim, was five years old when Appellant also showed her pictures of his penis on his cell phone. R.F. testified that Appellant would use the cell phone to take pictures up under her skirt. R.F. described how Appellant would come into her room at night, pick her up while she was sleeping and take her into his bedroom. R.F. would pretend she was asleep as Appellant removed her pants, rubbed Vaseline on his penis and had vaginal intercourse with her. Appellant also would touch R.F.'s buttocks and put his fingers under her pants while giving her piggy back rides. Prior to R.F.'s testimony regarding the sexual conduct, the trial court inquired of R.F. regarding the difference between real and make believe and truth and lies.
 {¶ 23} The victims' mother testified that the girls no longer wanted to live in the same neighborhood as the Appellant. In fact, they wanted to move in with their aunt because Appellant did not know where their aunt lived. Both parents and their cousin noted that the girls were glad when Appellant moved out of their home, but at the same time had questions about Appellant. K.F. and R.F. both testified that they were happy that Appellant moved out, while J.F. was sad and did not understand.
 {¶ 24} Appellant relies on Detective Robinson's testimony that children sometimes make false allegations or believe something happened that did not. However, Detective Robinson followed up by stating that false allegations usually occur with teenage girls telling inconsistent stories. In this case, the victims were all under the age of ten and their accounts of the sexual conduct and contact remained consistent. Based on her investigation, Detective Robinson did not believe that the victims were making false allegations.
 {¶ 25} Additionally, Appellant relied upon the social worker's testimony that coaching of the victims by an adult is a possibility. However, the social worker did not believe that any of Appellant's victims had been coached.
 {¶ 26} Appellant focused on the victims' two year delay in reporting the sexual conduct and contact and their lack of physical injuries to attack their credibility. However, Dr. Steiner, explained that children do not disclose immediately because they feel bad, guilty, or embarrassed or they have been threatened or groomed. Additionally, Dr. Steiner testified that the lack of physical injury does not negate allegations of sexual abuse. He explained that after 72 hours, physical evidence of abuse disappears due to the healing process. There is also a lack of scarring or residual tissue damage due to the healing properties of the mucosal lining in the genitalia. Dr. Steiner stated that the victims' behavior was consistent with sexual abuse, but admitted on cross-examination that it is not conclusive of sexual abuse. Nonetheless, Dr. Steiner diagnosed all three girls as victims of sexual abuse.
 {¶ 27} Based on our review of the entire record, we conclude that Appellant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice. Thompkins, 78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events, disbelieved Appellant and convicted him accordingly. We conclude that the convictions for rape and gross sexual imposition were not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.
2. Force — Sufficiency of the Evidence
 {¶ 28} Appellant argues that the life sentence imposed for the second count of rape regarding K.F. is improper as there was no evidence of force. The Ohio Supreme Court has recognized that
 "a child cannot be found to have consented to rape. However, in order to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires that some amount of force must be proven beyond that force inherent in the crime itself." State v. Dye
(1998), 82 Ohio St.3d 323, 327.
Force does not necessarily need to be overt and brutal. Id., quotingState v. Eskridge (1988), 38 Ohio St.3d 56, 58-59. Instead, force can be subtle and psychological. Id. Evidence that the offender overcame the rape victim's will via fear or duress is sufficient to establish forcible rape. Id.
 {¶ 29} The amount of force necessary in a rape depends on the victim's age, strength and size in relation to the offender. Eskridge,38 Ohio St.3d 56, paragraph one of the syllabus. In Eskridge, the rapist was the victim's father. Id. at 56. The Ohio Supreme Court held that "[w]ith the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." Id. at paragraph one of the syllabus.
 {¶ 30} In Dye, the Ohio Supreme Court extended the Eskridge holding to include the fact that persons who are not the natural parent of a child victim, but who stand in a position of authority over a child under the age of thirteen may be convicted of rape with force absent an express threat of harm or significant physical restraint. Dye,82 Ohio St.3d 323, syllabus; Riffle, 110 Ohio App.3d at 561. See, also, State v.Bolling, 2d Dist. No. 20225, 2005-Ohio-2509, at ¶ 41; State v.Musgrave (Dec. 3, 1998), 9th Dist. No. 18260, at *3.
 {¶ 31} In the instant case, the victims, their parents and cousin testified that Appellant was referred to as "Uncle Marc." The victims' parents explained that Appellant was in charge of the children whenever they were not home and the children knew they were to obey Appellant. Accordingly, Appellant was in a position of authority over the victims.
 {¶ 32} Appellant told K.F. to watch a pornographic movie with him and then instructed her to have sex with him. While K.F. did not want to do what Appellant had instructed her to do, she did comply as Appellant was an authority figure in her life. K.F. also testified that she was afraid of Appellant. The incidents involving count two of the indictment occurred when K.F. was ten years old, while Appellant was in his forties.
 {¶ 33} Accordingly, we find that there was sufficient evidence of force presented at trial to support the court's imposition of a life sentence on count two. Appellant's second assignment of error is overruled.
 III. {¶ 34} Appellant's assignments of error are overruled. The judgment of Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.