[Cite as *State v. Lacamera*, 2024-Ohio-899.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

FRANCIS LACAMERA,

        Defendant-Appellant.

CASE NO. 2023-T-0049

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2021 CR 01073

**O P I N I O N**

Decided: March 11, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Martin Yavorcik*, 940 Windham Court, Suite 7, Youngstown, OH 44512 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}    Francis Lacamera, appellant herein, appeals the judgment of the Trumbull County Court of Common Pleas convicting him, after a jury trial, of one count of felony-three Gross Sexual Imposition, one count of felony-one Rape of a child under 13 years old, and eight counts of felony-one Rape. Appellant challenges the sufficiency and the manifest weight of the evidence upon which the convictions were premised. For the reasons discussed in this opinion, we affirm.

{¶2} In December 2021, the Trumbull County Grand Jury returned a ten-count indictment charging appellant with: Gross Sexual Imposition with a Sexually Violent Predator Specification, a felony of the third degree, in violation of R.C. 2907.05(A)(4) and (C)(2) as well as R.C. 2941.148 ("Count One"); Rape with a Sexually Violent Predator Specification, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b) and (B), R.C. 2971.03(B)(1)(c), and R.C. 2941.148 ("Count Two"); and eight counts of Rape with a Sexually Violent Predator Specification, felonies of the first degree, in violation of R.C. 2907.02(A)(2) and (B) and R.C. 2941.148 ("Counts Three through Ten").

{¶3} Appellant pleaded not guilty and a jury trial commenced. The following testimony and evidence was adduced at trial:

{¶4} In January 2020, appellant moved in with the juvenile victim, S.S. (born February 15, 2008), her mother, and her younger brother. Shortly thereafter, S.S. was watching a movie with appellant when he touched the victim's vagina outside of her clothes. S.S. advised appellant to stop, and he did. S.S. was 12 years old at the time.

{¶5} Several days later, S.S.'s mother was again out of the house when appellant directed her to go upstairs of the residence and disrobe. S.S. viewed appellant as an adult figure and consequently followed his instructions. Appellant inserted his penis into S.S.'s vagina. She advised him to stop; S.S. stated she was crying, scared, and felt pain in her vagina. After the episode, appellant left the room leaving S.S. to "clean [her]self up." Appellant told S.S. not to tell her mother because it was their "little secret."

{¶6} According to S.S., such episodes occurred throughout the time appellant lived with her and her family. Indeed, she asserted the assaults persisted "almost everyday," "like, seven days a week." When asked if she felt threatened by appellant,

2

S.S. stated, "In a way, yeah. Just the, go upstairs now, like, what he would say kind of made me feel threatened." S.S. underscored she never wanted appellant to rub her vagina or for appellant to insert himself into her vagina.

{¶7} Approximately a month after appellant and S.S.'s mother broke up, S.S. was invited to appellant's apartment. Appellant advised S.S. that his children were coming over, and she was close with his kids. S.S. asserted she viewed them as siblings. When she arrived, however, appellant's children were not there. Appellant again had vaginal intercourse with S.S. against her wishes. She was 13 years old at the time.

{¶8} About a year later, S.S. told a friend about the incidents. She testified she waited to speak about the encounters due to fear of what people would say and whether they would believe her. S.S. then disclosed the incidents to her mother after which a police report was filed. S.S. underwent a sexual assault examination.

{¶9} Monique Malmer, a registered nurse practitioner for Akron Children's Hospital Child Advocacy Center, conducted the examination of S.S. Ms. Malmer stated she had conducted over three thousand examinations for sexual abuse. S.S. related the alleged sexual abuse she had suffered, which echoed the above facts. During the genital examination, Ms. Malmer located a transection of the hymen tissue, which she stated was confirmatory of penetration trauma for sexual abuse.

{¶10} Various other witnesses testified for the state and in appellant's defense, which testimony will be further developed below, as necessary.

{¶11} At the conclusion of evidence, the jury convicted appellant of each count in the indictment. After a hearing was held relating to the Sexually Violent Predator specifications, the trial court found appellant not guilty of those specifications.

3

Case No. 2023-T-0049

**{¶12}** The trial court sentenced appellant on Count One, 48 months of imprisonment; on Count Two, a minimum of 25 years up to a maximum of life imprisonment; and on Counts Three through Ten, 10 years of imprisonment on each offense. The trial court ordered each of the terms to be served concurrently for an aggregate prison term of 25 years to life. Appellant was also classified as a Tier III Sex Offender and Child Victim Offender. He now appeals assigning the following as error:

> [1.] The trial court erred in allowing a conviction where it was not supported by sufficient evidence.
>
> [2.] The trial court erred in entering judgment on the verdict against the manifest weight of the evidence.

**{¶13}** When an appellant challenges both the sufficiency and the weight of the state's evidence in an appeal, a reviewing court need only address the manifest weight argument because the conclusion that a verdict is consistent with the manifest weight necessarily includes the additional holding that it is also supported by sufficient evidence. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

**{¶14}** With this point in mind, a court considering a challenge to the manifest weight of the evidence reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994). In other words, the court must evaluate conflicting testimony, review rational inferences that may be drawn from the evidence, and evaluate the strength of the conclusions drawn therefrom. *See, e.g., State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

4

A challenge to the weight of the evidence requires a court to consider whether the state met its burden of persuasion. *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶ 78.

{¶15} Bearing the foregoing in mind, appellant argues: (1) the delayed reporting of the incidents as well as S.S.'s testimony that she only felt threatened by appellant "in a way" rendered her credibility suspect and thus militates strongly against the verdict; (2) his expert, Dr. Stephen Guertin, testified that the trauma caused to S.S.'s hymen could have been from a variety of occurrences, not merely sexual assaults or intercourse; and (3) if S.S. feared appellant or was at all threatened by him, there is no credible basis for her to visit and remain in contact with him via cell phone.

{¶16} Appellant does not challenge his conviction for Gross Sexual Imposition; instead, he focuses upon the evidence as it related to the elements of rape. R.C. 2907.02 governs the crime of rape and provides, in relevant part:

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> * * *
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>
> * * *
>
> (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

{¶17} R.C. 2907.01(A) defines "sexual conduct" as:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons

5

regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶18} Accordingly, to prove Count Two, the state had to establish, beyond a reasonable doubt, that appellant engaged in sexual conduct with S.S., who was not his spouse, and that S.S. was less than 13 years old. Moreover, to sustain Counts Three through Ten, the state had to prove, beyond a reasonable doubt, that appellant engaged in sexual conduct with S.S. and appellant purposely compelled S.S. to submit by force or threat of force.

{¶19} Appellant initially attacks S.S.'s credibility regarding her perception of appellant as a threat. Appellant diminishes S.S.'s testimony that she felt threatened "in a way." This argument addresses the "threat of force" prong of R.C. 2907.02(A)(2).

{¶20} S.S. testified that she viewed appellant as a father figure and referred to him as "dad." And, during a police interview, appellant stated he considered himself a father figure to S.S. It is also of some significant import that during the multiple assaults, S.S. was between 12 and 13 years old. That both appellant and the victim acknowledged the former assumed the role of a parental figure over the victim emphasizes everyone's mutual awareness of the authoritative position appellant held in S.S.'s life.

{¶21} Given the filial duties of obedience and respect a child owes a parent or parental figure, courts have acknowledged the same degree of force or threats of force is not required as in cases where the defendant does not hold such a privileged position. *State v. Borecky*, 11th Dist. Lake No. 2007-L-197, 2008-Ohio-3890, ¶ 25; *see also State v. Bolling*, 2d Dist. Montgomery No. 20225, 2005-Ohio-2509, ¶ 41, citing *State v.*

6

*Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). The Supreme Court of Ohio has observed:

> We recognize that it is nearly impossible to imagine the rape of a child without force involved. Clearly, a child cannot be found to have consented to rape. However, in order to prove the element of force necessary to sentence the defendant to life imprisonment, the statute requires that some amount of force must be proven beyond that force inherent in the crime itself. Yet "'[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *Eskridge*, 38 Ohio St.3d at 58-59, 526 N.E.2d at 306, citing *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 27 OBR 182, 187, 500 N.E.2d 390, 395.

*State v. Dye*, 82 Ohio St.3d 323, 327-328, 695 N.E.2d 763 (1998); *accord State v. Barnes*, 11th Dist. Trumbull No. 2022-T-0061, 2023-Ohio-353, ¶ 47.

{¶22} The same reasoning applies with equal force when a child is sexually assaulted by a non-parent who is in a position of authority. *See Bolling* at ¶ 41, citing *Dye.*

{¶23} Although direct force is not at issue in this matter, we conclude that, even though S.S. stated she felt threatened "in a way," she still testified she felt threatened. Further, S.S. testified she feared appellant due to the persistent and repetitive sexual assaults. And we would be remiss to ignore that, in addition to appellant's status as a parental figure, he is a fully grown adult male either directing or exhorting a 12- to 13-year-old juvenile female to submit to sexual contact. The significant physical and psychological power differentials between appellant and S.S. are patent, and appellant exploited his position to compromise S.S.'s will and sexually assault her multiple times. We accordingly conclude that appellant's status as a "father figure," which both appellant

7

and S.S. mutually recognized, as well as S.S.'s description of appellant's actions leading up to the assaults, provide sufficient, credible evidence to meet the "force" or "threat of force" element of the rape charges in Counts Three through Ten.

{¶24} Next, appellant contends S.S.'s delay in reporting the incidents weighs heavily against her credibility. We do not agree.

{¶25} Ms. Malmer informed the jury of the concept of delayed disclosure in sexual assault cases. She testified that more than 70 percent of children and women of any age take a minimum of a year to report incidents. Ms. Malmer stated that delay in disclosure is more common in children. She noted that sexual abuse in children often occurs at the hands of someone the child knows and trusts, and upon which the child is dependent. Considering this evidence, we fail to see how S.S.'s delayed disclosure had any meaningful impact upon the credibility of her substantive testimony regarding the assaults. Appellant's contention lacks merit.

{¶26} Appellant next points out his expert witness, Dr. Guertin, a physician and expert in sexual-abuse evaluation, testified that the injuries observed during Ms. Malmer's examination could have been caused by numerous benign events; namely, accidents, such as a straddle-type injury, splits, water skiing; use of a sex toy or voluntary sexual intercourse. Significantly, Dr. Guertin did not rule out forcible penile vaginal penetration as a cause of the injury. Regardless of the alternative, potential explanations for the vaginal trauma identified in the initial examination, the jury was able to evaluate S.S.'s rendition of events as well as Ms. Malmer's testimony relating to her interview and examination of S.S. Further, the jury was able to compare this testimony against that of Dr. Guertin. In resolving the conflicts, if any, between the testimony, the jury determined

8

that multiple, forcible sexual assaults occurred. Dr. Guertin's testimony did not in any way refute this conclusion. We therefore conclude the jury did not lose its way when it concluded, consistent with the vast weight of the testimony, that appellant committed the charged crimes.

{¶27} Finally, appellant contends S.S.'s version of events is suspect because she testified she continued to remain in contact with appellant after he moved out of the residence he shared with S.S. and her family. We recognize S.S. testified she remained in touch with appellant after he and her mother broke up. She stated she kept in touch "[a] little bit[.]" She noted that sometimes she would reach out to appellant and other times he would reach out to her. Appellant maintains S.S.'s behavior in this respect is untenable and cuts strongly against the version of events which led to the charges.

{¶28} We certainly recognize the anomalous nature of S.S. remaining in contact with appellant after he moved out and ceased dating her mother, particularly considering the harshness of the allegations. Nevertheless, S.S. testified, despite the sexual assaults, she viewed appellant as a parental figure. As such, one can reasonably infer that her perception of appellant was somewhat bifurcated: on one hand, she viewed him as a father figure, but on the other, he assaulted her on multiple occasions against her will. These competing perceptions, both of which are supported by S.S.'s testimony, provide a sound basis for the conclusion that S.S., as a young girl who had been subjected to repeated sexual assaults, was confused about the situation in which she found herself. Considering the other evidence surrounding the jury's verdict, we conclude that S.S.'s actions of contacting appellant after he was no longer in the residence does not weigh heavily against the conclusion that her will was compromised during each sexual assault.

9

{¶29} Moreover, in an interview with an investigating officer, which was played for the jury, appellant waived his *Miranda* rights and made several admissions. He claimed that, after he moved out of the residence he shared with S.S. and her family, S.S. sent him suggestive text messages. Throughout the interview appellant painted S.S. as the aggressor, but he initially denied anything occurred. He stated, however, S.S. came to his apartment and expressed an interest in having a sexual relationship with him. Appellant claimed he declined any such invitation and, that night, retreated to his bed to sleep. He asserted he awoke in the middle of the night, and S.S. was "stroking [his] dick." Appellant asserted he immediately left the bedroom and played video games. He did not admit to engaging in vaginal intercourse with S.S. during the interview. Appellant, however, was recorded on a jail telephone call to his mother, stating S.S. had "ridden" his penis while he was sleeping. The jury was entitled to resolve the conflicts between the interview and the telephone call and place that evidence in the context of the remaining testimony. In doing so, it elected to believe S.S. and discount appellant's white-washed account which placed the entirety of the blame for any sexual acts solely on S.S.

{¶30} Viewing the evidence in its entirety, the jury was in the best position to assess the credibility of witnesses and evaluate the substance of the recorded exhibits. In doing so, we cannot conclude that the jury's verdict is against the manifest weight of the evidence. There was sufficient, credible evidence to establish, beyond a reasonable doubt, that appellant engaged in sexual conduct with S.S., who is not his spouse, and that S.S. was under 13 years of age at the time (Count Two); there was also sufficient, credible evidence to support the conclusion, beyond a reasonable doubt, that appellant engaged in sexual conduct with S.S. by purposely compelling her to submit by force or

10

the threat of force. (Counts Three through Ten). We therefore hold the state met both its burden of production and persuasion.

{¶31} Appellant's first and second assignments of error lack merit.

{¶32} For the reasons discussed in this opinion, the judgment of the Trumbull County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2023-T-0049