**UNITED STATES of America, Plaintiff,**

v.

**Ernest H. HALL, Horace Greeley Miles, Jr., Defendants.**

**No. 3539.**

United States District Court
W. D. Kentucky,
Bowling Green Division.

July 22, 1957.

J. Leonard Walker, U. S. Atty., and William B. Jones, Asst. U. S. Atty., Louisville, Ky., for plaintiff.

Bell & Orr, Bowling Green, Ky., for defendant, Ernest H. Hall.

George Boston, Bowling Green, Ky., for defendant, Horace Greeley Miles, Jr.

SWINFORD, District Judge.

On May 21, 1957, the grand jury at Bowling Green returned an indictment charging the defendants under 18 U.S. C.A. § 371 with a conspiracy to violate 18 U.S.C.A. § 1010. The defendants were not before the court and process was issued for their appearance. On the following day, May 22, the defendants and their attorneys appeared in open court. The court fixed bond for their appearance and by agreement of the parties the case was assigned for July 8, 1957, for arraignment.

On July 8, 1957, the defendants appeared before the court with their attorneys and entered a motion to dismiss the indictment on the ground that it did not state facts sufficient to constitute an of-fense within the meaning of the statute. The motion to dismiss was considered by the court and overruled. The court formally arraigned the defendants and they entered pleas of not guilty to the charges contained in the indictment.

■ The defendants then filed a motion to be permitted to inspect records contained in the file of the case in the possession of the United States. To the motion the United States at the time offered no objection. The court considered the motion and upon request was informed that the file in the case was in the possession of an agent of the Federal Bureau of Investigation, whom the court understood at the time was present in the courtroom, and that the files were in the office of this agent on the third floor of the court building and just a few steps above the courtroom wherein court was being held.

The court sustained the motion and specifically orally stated that the defendants were not entitled by the order to examine the whole file and investigation conducted by the United States in preparation of its case. The defendants were entitled only to have presented to them the statements of persons or summation by the agent of statements made to them by persons who were to be called as witnesses on the trial of the case and which statements were at present in the possession of the agents or attorneys of the United States.

By agreement of the parties the case was set down for trial by jury for Wednesday, July 17, 1957, at 1:00 p. m.

It was the understanding of the court at the time this order was entered that the defendants and their attorneys would have access to the statements referred to by calling at the office of the Federal Bureau of Investigation on the third floor of the building in which court was being held on the second floor.

On July 10 the attorneys for the defendants called in the chambers of the judge of this court and stated that the agent would not permit them to see the statements of the witnesses as directed

by the order. Also, on the same date, the United States Attorney, who was in his office in Louisville, telephoned the judge of this court and talked with him on the phone stating that the United States could not comply with the order or permit the attorneys or the defendants to see the statements of proposed witnesses as he was directed by the Attorney General in Washingon to decline to permit such inspection and examination.

We now come to the hour of trial which was set at the request of the United States and by agreement of the parties without offering objection for this date, to wit, July 17, at 1:00 p. m.

The ruling of the court on the motion to inspect the documents was based on the decision of the Supreme Court in the case of Clinton E. Jencks v. U. S., 77 S. Ct. 1007. That case seems to either overrule or greatly enlarge the rule which has heretofore been followed in the trial courts as laid down in Goldman v. U. S., 316 U.S. 129, 62 S.Ct. 993, 86 L. Ed. 1322 and Olmstead v. U. S., 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944. The Supreme Court now seems to have reached a conclusion which many of the judges, by their dissenting opinions in former cases, have apparently anticipated; that is, to reduce to an absolute minimum the possibility of a defendant being taken by surprise by the testimony of a government witness during the trial of the case. The decision in the Jencks case is so reasonable and fair that this court sought to follow it both in the letter and in the spirit. It must be noted that the order guarded against a "broad or blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up." [77 S.Ct. 1012] Nor was it a "demand for statements taken from persons or informants" not to be offered as witnesses.

This court well recognizes the fact that to permit the defendants to explore the whole file without reservation is to seriously hinder the administration of justice and the preservation of an orderly society by protection from those who would seek to destroy it by crime or treason. Frequently information comes to the Department of Justice in a confidential way. The integrity of the Department of Justice and its agents must be respected and preserved. Promises to treat information as confidential is many times the only way in which material facts can be ascertained. Neither the Department nor its agents should be required to make those facts known to the defendants.

My interpretation of the opinion in the Jencks case is that it recognizes a fundamental principle of free government; that the rights of the individual must be preserved; that that government is best which protects the individual from his own government and that a criminal prosecution should be entirely devoid of any possibility of surprise to the defendant at the time of trial.

In the instant matter the court has very jealously guarded the confidences of the Department of Justice and directed that only those statements of persons who were to appear as witnesses could be examined by the defendants. This does not mean that the United States is limited in offering only those witnesses which have given statements, either signed or orally, and is in nowise similar to the requirements of a bill of particulars which places the United States in a strait jacket and limits it in its introduction of proof. I cannot understand why the United States would object to a full compliance with the order.

The rule laid down in the Jencks case for the guidance of trial courts is expressed in the following language taken from the the opinion:

"We now hold that the petitioner was entitled to an order directing the Government to produce for inspection all reports of Matusow and Ford in its possession, written and, when orally made, as recorded by the F. B. I., touching the events and activities as to which they testified at the trial. We hold, further, that the petitioner is entitled to inspect the reports to decide whether to use

them in his defense. Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less.

"The practice of producing government documents to the trial judge for his determination of relevancy and materiality, without hearing the accused, is disapproved. Relevancy and materiality for the purposes of production and inspection, with a view to use on cross-examination, are established when the reports are shown to relate to the testimony of the witness."

It seems clear to me that this language entirely dissipates any thought that the court must wait until the trial of the case and be actively engaged in the trial before the requirement to produce the documents can be made. There could be no reason for such a rule. The parties have notice of the date of trial. The idea of setting the case far in advance is to give them an opportunity to prepare for trial. If the trial of a case had to be interrupted in the middle of the trial for the examination of these statements, the court would necessarily then have to postpone or interrupt the progress of the trial for a reasonable time until the defendants had an opportunity to seek out, examine and subpoena witnesses that might rebut the statements.

Rules 16 and 17, Rules of Criminal Procedure, 18 U.S.C.A., are the methods by which documents may be brought into court for use at the trial. In discussing Rule 17(c) the court said in Bowman Dairy Co. v. U. S., 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879, that its chief innovation was to expedite the trial by providing the time and place *before trial* for the inspection of the subpoenaed material. It cited the case of U. S. v. Maryland & Virginia Milk Producers

Ass'n, D.C., 9 F.R.D. 509. Pre-trial disclosures have been allowed in U. S. v. Peace, D.C.1954, 16 F.R.D. 423; U. S. v. Singer, D.C.1956, 19 F.R.D. 90; U. S. v. Schluter, D.C.1956, 19 F.R.D. 372, and in numerous other cases.

We next come to the question of much greater significance and that is whether or not a litigant can direct its agent to ignore an order of the court and defy the court that entered it. This is especially significant when the litigant is the people's agency for the protection of the people, the United States Government, and its agent is the head of the Department of Justice. It would seem more appropriate that the Department of Justice of the United States should recognize above all persons or agencies the fundamental proposition that in our form of government the orders of the court must be respected, and thereby set an example to uphold the integrity and sanctity of the court's orders rather than to belittle a respected coordinate branch of the government.

In the case of Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 281, 66 L.Ed. 550, Chief Justice Taft, speaking for a unanimous court, said: "It is for the court of first instance to determine the question of the validity of the law and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders, based on its decision, are to be respected." U. S. v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; Amalgamated Clothing Workers v. Richman Brothers Co., 6 Cir., 211 P.2d 449.

On June 1, 1957, the Court of Appeals for the Sixth Circuit in the case of Kasper v. D. J. Brittain, Jr., et al., 245 F.2d 92, quoted the above statement by Chief Justice Taft and added: "So only, may the dignity of courts be maintained and Constitutional rights be ab initio preserved."

The court in the present case is faced with the proposition of enforcing its valid orders as they have been determined to be valid by the fact of their entry. The opinion in Jencks v. U. S.,

supra, provides that if the order is not observed that the criminal action must be dismissed and that the burden of the dismissal is on the Department of Justice and is not shifted to the trial judge. I respect this decision and such remedial action may have been appropriate in the Jencks case. I cannot conclude, however, in the case at bar that such suggested procedure is meant to deny the court the right to exercise its inherent right of punishment for contempt of court or invoking the right to punish for contempt as expressly given to it by Rule 42(a), Rules of Criminal Procedure, and by statute in 18 U.S.C.A. § 401(2), (3).

This would be considered a civil rather than a criminal contempt but there is no essential difference between them. Yates v. U. S., 9 Cir., 227 F.2d 844.

■ It has been repeatedly held and sustained by the Supreme Court that a judge has the duty to take affirmative action when lawful demands of the court are defied. In re Fletcher, 4 Cir., 216 F. 2d 915, certiorari denied 348 U.S. 931, 75 S.Ct. 347, 99 L.Ed. 730; Id., 350 U.S. 864, 76 S.Ct. 107, 100 L.Ed. 766.

■ It was not necessary that the documents sought to be examined should have first been formally subpoenaed after the court had ordered their production for examination. Green v. U. S., 2 Cir., 193 F.2d 111.

■ A defendant may be required to produce requested documents where they are shown to be presently within his control. U. S. v. Patterson, 2 Cir., 219 F.2d 659.

I do not feel that a dismissal of this indictment would be proper. It is not a question of whose responsibility, whether the Department of Justice or the court. This indictment charges a very serious crime. In substance, the defendants are accused of making a false claim by which they were to profit out of the Treasury of the United States. The case was investigated by a grand jury, a sovereign body and a very important agency of the government. From a practical standpoint it might be said that the United States Government is responsible for the indictment being returned. That does not diminish the historical importance and function of the grand jury. The indictment was returned by a grand jury of the people of this district and the charge contained in it could not have been made had that grand jury not acted as it did. I do not feel that the court should now nullify the action of the grand jury and deny the people of the United States the right to prosecute those who have been indicted by a grand jury of the people for a serious crime. In this instance it is the duty of the court to adopt other methods of enforcing its orders and if it is determined that the executive branch of the government can defy the orders of the judiciary, such fact should be made known without further delay.

In the case of U. S. ex rel. Touhy v. Regan, Warden, et al., 340 U.S. 462, 71 S.Ct. 416, 419, 95 L.Ed. 417, the Court, speaking through Mr. Justice Reed, made the following statement:

"Petitioner challenges the validity of the issue of the order under a legal doctrine which makes the head of a department rather than a court the determinator of the admissibility of evidence. In support of his argument that the Executive should not invade the Judicial sphere, petitioner cites Wigmore, Evidence (3d ed.), § 2379, and Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60. But under this record we are concerned only with the validity of Order No. 3229. The constitutionality of the Attorney General's exercise of a determinative power as to whether or on what conditions or subject to what disadvantages to the Government he may refuse to produce government papers under his charge must await a factual situation that requires a ruling."

In the case just above quoted, Mr. Justice Frankfurter, in a concurring opinion, pointed out that in the case of Boske v. Comingore, 177 U.S. 459, 20 S. Ct. 701, 44 L.Ed. 846, on which the

Court relied, there was no hint that the Government could shut off an appropriate judicial demand for documents and that the opinion is not a basis for a future suggestion that the Attorney General could forbid a subordinate, who is capable of being served by process, from producing documents and later contest a requirement upon him to produce on the ground that procedurally the Attorney General could not be reached.

It is true that the Attorney General is not within the jurisdiction of this court but his agent who has in his possession the documents in question is within the jurisdiction of the court and has been notified by order, which he acknowledges, to produce them. The documents themselves, while not in the immediate view of the court are in the same building and within a few feet of where the court is being held. He has been directed, not only by the order but orally, to produce the documents to the defendants. He has refused to comply. It is not necessary that the court write a mandate rather than give an oral order or why the court cannot take the agent's assertion of defiance at its own face value. Green v. U. S., supra.

It has been frequently held that no individual may refuse to surrender existing documents of a corporation or association if they be within his control. U. S. v. Fleischman, 339 U.S. 349, 70 S. Ct. 739, 94 L.Ed. 906; U. S. v. Field, 2 Cir., 193 F.2d 92, certiorari denied 342 U.S. 894, 72 S.Ct. 202, 96 L.Ed. 670.

If it is contended successfully that the agent who has these documents in his possession cannot be reached because he is acting under a mandate from a superior who is now in Washington out of the jurisdiction of this court, then, of course, this court is helpless to enforce its orders and must resort to the expedient alternative of dismissing the indictment. That seems to have been the determination in U. S. ex rel. Touhy v. Ragen, Warden et al., 7 Cir., 200 F.2d 195, but I do not feel that courts should be so hampered in an effort to comply with the provisions of the law as interpreted by the highest court in the land. If that were the case, no district judge outside of the District of Columbia could enforce orders directing the production of documents within the immediate presence of the court.

The action here is one in which the rights of the parties may be determined by a discipline of the agent with as much propriety as if the principal had been within the jurisdiction of the court. Ken-Rad Tube & Lamp Corp. v. Badeau, D.C., 55 F.Supp. 193, and cases cited in that opinion.

As said by Mr. Justice Frankfurter in the concurring opinion in Touhy v. Ragen, supra, "to hold now that the Attorney General is empowered to forbid his subordinates, though within a court's jurisdiction, to produce documents and to hold later that the Attorney General himself cannot in any event be procedurally reached would be to apply a fox-hunting theory of justice that ought to make Bentham's skeleton rattle."

It is the judgment of the court that the agent who has the documents in question in his possession, and who has heretofore refused and continues to refuse to produce them as directed by the order of the court, is in contempt of court and there is assessed against him a fine of $1,000. By his action he has interfered with the orderly processes of the court, delayed trial of the defendants, not only in this case but other cases growing out of the same circumstances and conditions as the cases assigned for trial today. I am advised that there are more than sixty witnesses who have been summoned from various places and are now present in court for the trial of these cases. I recognize the fact that this gentleman, Mr. Wallace, is in nowise personally expressing his views but is acting as a faithful employee of a department of the government and under the direction of a superior. I do not want to work a hardship upon him. In view of the statement of the United States Attorney that there is apparently presented a novel question, I am going

to suspend the imposition of the sentence and continue the case.

The penalty is suspended on condition that the agent comply with the order and the directive therein contained not later than October 18, 1957. That will give the United States an opportunity to confer and appeal or to take what other steps it thinks proper and at the same time it will be thirty days before the trial and if the documents and statements are made available by that time, the defendants will have ample time to prepare to rebut or meet them.

That is the judgment and order of the court.