[Cite as *State v. Rucker*, 2012-Ohio-185.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                              |
|--------------------------|---|------------------------------|
| STATE OF OHIO,           | : | APPEAL NO. C-110082          |
|                          |   | TRIAL NO. B-0905355          |
| Plaintiff-Appellee,      | : |                              |
|                          |   |                              |
| vs.                      | : | *O P I N I O N.*             |
|                          |   |                              |
| CLIFFORD RUCKER,         | : |                              |
|                          |   |                              |
| Defendant-Appellant.     | : |                              |

Criminal Appeal From:  Hamilton County Common Pleas Court

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded.

Date of Judgment Entry on Appeal:  January 20, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Judge.**

{¶1}   Following a jury trial, defendant-appellant Clifford Rucker was convicted of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A).  The trial court sentenced him to five years in prison.  Rucker now appeals.

### *The State's Case*

{¶2}   The state presented the following evidence at trial.  Rucker lived with a woman named Patricia for much of their 16-year relationship.  He helped to raise Patricia's daughter, J.J., from the time she had been born in 1993.  J.J. called Rucker her "Daddy."  In 1996, Rucker and Patricia had a son, C.R.  The family resided in several different homes over the years.

{¶3}   When J.J. was 16 years old, she ran away from home.  Patricia received a text message from J.J., saying that she wanted to tell her something.  In the message, J.J. instructed her mother not to bring Rucker with her.  At the time that she received J.J.'s text message, Patricia had been lying in bed next to Rucker.  After Rucker read J.J.'s message, he got up from the bed and said, "I don't know what she has to tell you.  I haven't been molesting her, or beating her, or nothing while you at work."  Patricia demanded of Rucker, "Why would you say that? Why would that be the first thing that come out of your mouth?"  Rucker did not respond.  He told Patricia to take him to his mother's house.

{¶4}   J.J. told Patricia that she had run away because Rucker had been molesting her since she was 13 years old.

{¶5}   J.J. testified that Rucker's sexual abuse had begun when she was in the seventh grade.  She said that Rucker had picked her up from school and had taken her home.  He had pulled down her skirt and had had vaginal intercourse with her.  For years, J.J. did not tell her mother about the incident.

2

{¶6} J.J. said that Rucker would have sex with her when her mother was at work at night. Rucker would tell J.J.'s brother C.R. that if he did not go to sleep, Rucker would "whop him." J.J. testified that when Rucker disciplined her and her brother, he would strike them with belts. She said that she had covered up the belt marks on her body so that her mother would not see them.

{¶7} In an incident that occurred in 2009, near J.J.'s sixteenth birthday, Rucker told J.J. to come into his and Patricia's bedroom. He told her that she knew what he wanted. When J.J. said no, Rucker started hitting her with his fists on her shoulders. Rucker pushed J.J. onto the bed and had vaginal intercourse with her.

{¶8} C.R. testified that when his mother went to work, Rucker would tell him to go to sleep and then stand by his bed with a belt until he went to sleep. C.R. said that sometimes he would wake up to hear his sister J.J. screaming, downstairs and in other rooms. Or he would hear squeaking sounds from his mother's and father's bed.

{¶9} The state presented additional testimony from Kathi Makoroff, a child-abuse pediatrician at the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital. Makoroff testified that before she conducted a physical examination of J.J., a forensic interviewer had questioned her. According to Makoroff, J.J.'s genitalia had not shown any sign of trauma, but that such a finding was entirely consistent with her history of being sexually abused.

{¶10} The state presented recordings of two telephone calls made by Rucker to his mother while he was detained in the Hamilton County Justice Center ("HCJC"). In one call, Rucker's mother said that she had heard that Rucker had admitted that he had done "that." Rucker replied that he had not admitted to anything. He said, "I said I admitted reaching over and touching [J.J.] before kicking her out the bed." In the second call, Rucker told his

mother, "I said I did reach over there, you know, but when I knew it wasn't [Patricia] * * *, I kicked [J.J.] out the bed."

### *The Defense Case*

{¶11}  In his defense, Rucker testified that on one occasion, when the family lived in Elmwood Place, he was lying in bed when he reached over and touched J.J.  But when he realized it was not Patricia, he pushed J.J. out of the bed.  Rucker testified that Patricia and C.R. were in the bedroom with them at the time.

{¶12}  Rucker acknowledged that in the two recorded phone calls played by the state at trial, he had said nothing to his mother about C.R. and Patricia having been in the bedroom during the touching incident.  According to Rucker, he had told his mother in other phone calls from the HCJC that C.R. and Patricia had been in the room during the incident.

{¶13}  Rucker presented the testimony of several teachers who stated that J.J. had had behavioral problems at school, including her failure to take direction or to appear for class.  No teacher had noticed evidence of injuries to J.J. or had received a report from J.J. that she was being sexually abused.  Several teachers stated that Rucker had appeared at school to see if J.J. was attending class.

### *The State's Rebuttal*

{¶14}  In its case in rebuttal, the state presented the testimony of a detective who had listened to recordings of Rucker's phone calls from the HCJC to his mother.  In more than 40 calls, the detective said, Rucker had never mentioned to his mother that C.R. and Patricia had been present during the touching incident in Elmwood Place.

### The Indictment and Conviction

{¶15}  Rucker was indicted for three counts of rape, two counts of unlawful sexual conduct with a minor, and three counts of sexual battery.  The jury found him guilty of one count of sexual battery and one count of unlawful sexual conduct.  At sentencing, the trial court merged the battery count with the sexual-conduct count.  The court imposed a five-year prison term on the sexual-conduct count.

### Other Acts

{¶16}  In his first assignment of error, Rucker argues that the trial court should not have allowed the prosecution to introduce evidence of other bad acts.  Specifically, Rucker points to evidence from C.R. that Rucker would intimidate him by standing by his bed at night with a belt, and to evidence from J.J. that Rucker had repeatedly struck her and had bruised her arms.  He contends that he was prejudiced by the testimony because it disparaged his character and portrayed him as a violent and bad man.

{¶17}  Generally, in a criminal prosecution, the state is not permitted to present evidence of other crimes or acts to prove that the defendant acted in conformity with his bad character.  But Evid.R. 404(B) and R.C. 2945.59 allow evidence of other bad acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

{¶18}  C.R.'s testimony that Rucker had stood by his bed with a belt until he fell asleep was relevant to show Rucker's intent, opportunity, preparation, and plan with respect to his sexual assaults upon J.J.  In addition, Rucker was accused of three counts of rape by force or threat of force in violation of R.C. 2907.02(A)(2). The testimony by J.J. that Rucker had struck her with belts was directly relevant to the element of force.  Even if the beatings had occurred at times other than the sexual assaults, the evidence was relevant to demonstrate how J.J.'s will had been overcome by fear or duress where an authority figure

had told her to do something. *See State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988). Accordingly, we overrule the first assignment of error.

### *Prosecutorial Misconduct*

{¶19} In his second assignment of error, Rucker argues that prosecutorial misconduct during opening statements deprived him of a fair trial. He contends that the prosecutor mischaracterized the expected testimony of C.R. to include C.R.'s being beaten by Rucker to make him go to his room and, on one occasion, C.R.'s having seen Rucker on top of J.J.

{¶20} Rucker did not object to the prosecutor's comments, so he has waived all but plain error. *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45. Rucker must show that the prosecutor's conduct was improper and that, but for the error, the outcome of the trial would have been different. *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997).

{¶21} During opening statements, the attorneys are accorded latitude and may, in good faith, comment on the facts to be presented at trial. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 157.

{¶22} During the state's case-in-chief, C.R. testified that Rucker would tell him to go to bed, "and if I didn't, he would stand by my bed with a belt." When asked if Rucker would beat him then, C.R. responded, "No. Just wait there until I went to sleep." C.R. said that he would wake up to hear J.J. screaming. C.R. did not say that he had seen Rucker on top of his sister. On the other hand, C.R.'s sister, J.J., testified that Rucker had disciplined her and C.J. by yelling and by hitting them with belts. In addition, she said that if C.R. did not go to sleep, Rucker would "whop him."

{¶23} While the prosecutor's opening statement about C.R.'s anticipated testimony went beyond C.R.'s actual testimony, we cannot say that the outcome of the trial would have been different without the prosecutor's remarks. Moreover, Rucker does not assert any bad faith on the part of the prosecutor and has failed to demonstrate that he was prejudiced by the remarks. The trial court repeatedly instructed the jury that opening statements are not evidence. We presume that the jury followed the court's instructions, *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994), and we overrule the second assignment of error.

### Senate Bill 10

{¶24} In 1996, the General Assembly enacted Am.Sub.H.B. No. 180, commonly known as "Megan's Law." 146 Ohio Laws, Part II, 2560, amended in 2003 by Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6556. The act amended R.C. Chapter 2950 and established a new sex-offender classification and registration scheme. *See State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 7. In 2007, the General Assembly enacted Am.Sub.S.B. No. 10 ("Senate Bill 10"), which amended various sections of R.C. Chapter 2950, to implement the federal Adam Walsh Child Protection and Safety Act of 2006. *Id.*

{¶25} Rucker was classified as a sexual offender under the provisions of Senate Bill 10. In his third assignment of error, Rucker argues that his classification is unconstitutional because Senate Bill 10 violates the separation-of-powers doctrine.

{¶26} As an initial matter, we note that the Ohio Supreme Court has held that Senate Bill 10, as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws. *State v. Williams*, *supra*, at syllabus. In this court's recent decision, *In re Bruce S.*, we held that Senate Bill 10's classification, registration, and community-notification provisions may not constitutionally be applied to a

sex offender who committed his sex offense between the July 1, 2007, repeal of Megan's Law and the January 1, 2008, effective date of Senate Bill 10's classification, registration, and community-notification provisions. 1st Dist. No. C-110042, 2011-Ohio-6634. In this case, the record contains evidence that Rucker had engaged in sexual conduct with J.J. *after* January 1, 2008. Because Rucker committed a sex offense after the effective date of Senate Bill 10's classification provisions, we hold that the trial court properly classified him under that statute.

{¶27} Rucker argues that Senate Bill 10 violates the separation-of-powers doctrine "because all discretion has been removed from the judicial branch."

{¶28} Certain provisions of Senate Bill 10 have been invalidated as unconstitutional infringements by the executive branch upon the judiciary's power. In *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, the Ohio Supreme Court held that R.C. 2950.031 and 2950.032, which governed the reclassification by the attorney general of sex offenders already classified by judges under Megan's Law, violated the separation-of-powers doctrine. The court explained that the Senate Bill 10 reclassification scheme improperly vested the executive branch with the authority to review judicial decisions, and interfered with the judicial branch by requiring the reopening of final judgments. *Id.* at ¶ 55.

{¶29} Although *Bodyke* applied to offenders who, unlike Rucker, had been previously classified under Megan's Law and then reclassified under Senate Bill 10, its reasoning is instructive. Under Megan's Law, a court was required to conduct a hearing and consider various statutory factors in making its sex-offender classification determination. *Williams*, *supra*, at ¶ 16, citing former 2950.09(B)(3), Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6558, 6689-6690. Senate Bill 10 did away with the Megan's Law's requirements for a hearing and a judicial determination of sexual-offender classification. *Bodyke*, *supra*, at ¶ 22.

{¶30} Under Senate Bill 10, a sex offender's classification is automatic depending on the offense. *Williams, supra*, at ¶ 19. The statute requires no judicial review of the sex-offender classification. *Id.* The registration requirements apply without regard to the circumstances of his offense or his likelihood to reoffend. *Bodyke, supra*, at ¶ 21-22; R.C. 2950.01(F)(1)(b). Under Senate Bill 10, based on his classification, Rucker is automatically subject to the statute's registration requirements, and the attorney general has no role in the classification. R.C. 2950.04(A)(2). Senate Bill 10, as applied to an offender whose crime was committed after its enactment date, does not require, or result in, an intrusion by the executive branch upon the judiciary's power. Accordingly, we overrule the third assignment of error.

{¶31} The trial court's sentencing entry reflects that Rucker was classified as a Tier III offender. However, Rucker's conviction under R.C. 2907.04(A) is a Tier II offense. *See* R.C. 2950.01(F)(1)(b). Consequently, we remand this case to the trial court to amend its judgment entry to reflect that he is a Tier II offender.

{¶32} In his appellate brief, Rucker also purports to challenge Senate Bill 10 on Double Jeopardy and Eighth Amendment grounds. However, Rucker has failed to present for our review any separate arguments regarding those claims. To be considered on appeal, errors by a trial court must be argued and supported by legal authority and citation to the record. App.R. 16(A); *State v. Johnson*, 1st Dist. No. C-080327, 2009-Ohio-4988. Errors not argued in a brief will be deemed to have been abandoned. App.R. 12(A)(2); *Johnson, supra*, at ¶ 9. Accordingly, we will disregard Rucker's assignment of error to the extent that it purports to raise those issues.

### *Refreshing a Witness's Recollection*

{¶33} In his fourth assignment of error, Rucker argues that the trial court erred by permitting J.J. to read her previously recorded interview by a social worker. We disagree.

{¶34} Evid.R. 612 permits a party to use a writing to refresh a witness's recollection. *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369 (1996). In this case, the interview had taken place almost two years before the case proceeded to trial. J.J. admitted on direct examination that she could not remember the details of the last encounter she had had with Rucker. After reviewing her prior statements about the incident, J.J. indicated that her memory had been refreshed. Under these circumstances, the trial court committed no error. We overrule the fourth assignment of error.

### *The Child's Interview*

{¶35} In his fifth assignment of error, Rucker argues that the trial court erred by admitting a digital recording of J.J.'s interview at the Mayerson Center. Rucker contends that portions of the interview contained inadmissible hearsay, in the form of "irrelevant portions about Mr. Rucker's personal life," that violated his right to confrontation as spelled out in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)and *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775.

{¶36} In *Crawford*, the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford* at 53-54. In *Arnold*, the Ohio Supreme Court held that statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause. *Arnold* at paragraph one of the syllabus.

10

{¶37}  But in this case, J.J. testified at trial and was subject to cross-examination on the statements she had made at the Mayerson Center.  "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 113, quoting *Crawford*, *supra*, at 59, fn.9.  Moreover, Rucker invited any alleged error by introducing the recording of the interview into evidence.  See *State v. Daniels*, 1st Dist. No. C-090566, 2010-Ohio-5258.

### *Vouching for the Credibility of a Witness*

{¶38}  In his sixth assignment of error, Rucker argues that the trial court erred by allowing Dr. Makoroff to testify that J.J.'s behavior was consistent with having been sexually abused because it amounted to vouching for J.J.'s credibility.

{¶39}  In this case, Dr. Makoroff did not offer an opinion as to the truth of J.J.'s statements, testimony which is proscribed by *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), overruled, in part, on other grounds by *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944.  Instead, Dr. Makoroff testified that generally children who are sexually and physically abused may have no subsequent behavioral changes, or they may exhibit "acting out" behaviors, such as getting in trouble in school, not listening to their parents, running away from home, or promiscuous behavior.  An expert witness is permitted to testify that the behavior of an alleged child victim of sexual abuse is consistent with behavior generally observed in sexually abused children.  *State v. Stowers*, 81 Ohio St.3d 260, 261, 690 N.E.2d 881 (1998).  So the trial court did not err by allowing Makoroff to testify about J.J.'s behavior being consistent with having been sexually abused.  We overrule the sixth assignment of error.

### *Non-Specific Dates of Offenses*

{¶40}  In his seventh assignment of error, Rucker argues that the trial court erred by failing to grant his motion to dismiss and by denying his motion for a new trial.  Rucker contends that he was prejudiced because the indictment and the bill of particulars did not allege specific dates for the offense.

{¶41}  Under the Ohio and United States Constitutions, a person accused of a felony is entitled to an indictment setting forth the "nature and cause of the accusation."  The indictment compels the state to aver all material facts constituting the essential elements of an offense so that an accused is given adequate notice and an opportunity to defend.  *See State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985).  By identifying and defining an offense, the indictment also allows an accused to protect himself from future prosecutions for the same conduct.  *Id.*

{¶42}  Generally, precise dates and times are not essential elements of offenses, so the failure to provide them will not be a basis for dismissal of an indictment.  *Id.* at 171.  The state must, in response to a request for a bill of particulars, supply specific dates and times of an alleged offense where it possesses that information.  *Id.*, syllabus.

{¶43}  In many cases involving the sexual abuse of children, the victims are simply unable to remember exact dates, especially where the crimes involve a repeated course of conduct over an extended period of time.  *State v. Mundy*, 99 Ohio App.3d 275, 650 N.E.2d 502 (2nd Dist.1994). So when a child is victimized over an extended period of time, an indictment may allege criminal conduct that extends over a range of dates.  *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506 (1st Dist.).

{¶44}  In this case, the indictment alleged that Rucker had engaged in unlawful sexual conduct with J.J. between November 2006 and March 2009.  The state provided a bill of particulars that identified specific sexual acts that had occurred at specific addresses

over a period of time before J.J. turned 16. Rucker's defense was that J.J. had fabricated the allegations of sexual abuse. This notification was sufficient to put Rucker on notice of the substance of the allegations. *Lukacs, supra*; *State v. Short*, 1st Dist. No. C-100552, 2011-Ohio-5245. We overrule the seventh assignment of error.

### *Weight and Sufficiency*

{¶45} In his eighth assignment of error, Rucker argues that his conviction was against the weight of the evidence and was not supported by sufficient evidence. Rucker was convicted of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), which prohibits anyone who is 18 years of age or older from engaging in sexual conduct with another "when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." Sexual conduct means vaginal intercourse between a male and a female. R.C. 2907.01(A).

{¶46} Following our review of the record, we hold that a rational juror, viewing the evidence in a light most favorable to the state, could have found that the state had proved beyond a reasonable doubt that Rucker had committed the offense of unlawful sexual conduct with a minor. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Although Rucker tried to discredit J.J.'s testimony, the weight to be given the evidence and the credibility of the witnesses were primarily for the jury to determine. See *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Moreover, our review of the record fails to persuade us that the jury clearly lost its way and created a manifest miscarriage of justice in finding Rucker guilty of the offense. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Accordingly, we overrule the eighth assignment of error.

### *The Sentence*

{¶47}  In his ninth and final assignment of error, Rucker argues that the five-year prison sentence imposed by the trial court was excessive.  The sentence was not contrary to law.  *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14.  It was within the statutory range specified for the offense.  *See State v. Clark*, 1st Dist. No. C-090573, 2010-Ohio-3962, ¶ 22.  In light of Rucker's criminal history, which included a prior prison term, we cannot say that the trial court abused its discretion in imposing a five-year prison term.  See *Kalish, supra*, at ¶ 17.  We overrule the ninth assignment of error.

### *Conclusion*

{¶48}  We affirm in part and reverse in part the judgment of the trial.  We remand this case to the trial court to amend its judgment entry to reflect that Rucker is a Tier II sex offender.

Judgment accordingly.

**DINKELACKER, P.J.,** and **CUNNINGHAM, J.**, concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.