Curt C. Hartman, Judge, Hamilton County Common Pleas Court
This matter is before the Court on the Motion to Amend Counts 1 to 4 of the Indictment wherein the STATE OF OHIO seeks, pursuant to Ohio R. Crim. P. 7(D), to expand the date ranges specified in the Indictment as to when Defendant JIM NAPIER allegedly engaged in certain criminal conduct. Because allowing the amendment of an indictment so as to expand or broaden the scope of the allegations therein violates the principles of separation of powers and violates the constitutional right by which felony criminal proceedings may proceed only on presentment or indictment of a grand jury, the Motion to Amend is DENIED.
I.
A.
On January 26, 2017, the Hamilton County Grand Jury returned an indictment, *790 charging Defendant JIM NAPIER with four counts of rape, all in violation of Ohio Rev. Code § 2907.02(A)(1)(b), viz., engaging in sexual conduct with a person not one's spouse and who was less than thirteen years of age.
As set forth in the Indictment, Counts 1 and 2 involve the same victim, identified as V.C., with the actus reus of Count 1 allegedly occurring between March 2005 and March 2006, and the actus reus of Count 2 allegedly occurring between March 2006 and March 2007.[1] Though the Indictment does not specifically allege it, the STATE OF OHIO maintains that these counts arise from an on-going series of acts occurring "on multiple occasions and on multiple indeterminate dates". Motion to Amend, at 4.
Counts 3 and 4 involve a different victim, identified as D.N., with the actus rei of both counts allegedly occurring during the same period of time, i.e., sometime between July 2009 and September 2009. With respect to these counts and in contrast to Counts 1 and 2, the STATE OF OHIO does not maintain such acts were part of an on-going series of acts by Mr. NAPIER during the date range, but, instead, occurred on two distinct occasions during the date range.
B.
Through the Motion to Amend, the STATE OF OHIO seeks to expand the date ranges when Mr. NAPIER allegedly engaged in the criminal conduct. Specifically, the STATE OF OHIO seeks to expand the date ranges for Counts 1 and 2 from March 2005 to March 2006 and from March 2006 and March 2007, respectively, to having both counts now being from August 2002 to March 2007; and, with respect to Counts 3 and 4, the STATE OF OHIO wants to expand the date ranges from July 2009 to September 2009 to now being from December 2007 to October 2009.
Simply stated, the issue sub judice is whether, notwithstanding the clear pronouncement of the grand jury as contained in the Indictment as to its accusation as to when the alleged criminal conduct of Mr. NAPIER occurred, the Court may, solely at the request of the STATE OF OHIO, broaden the date range so as to include a period of time during which the grand jury did not find probable cause that criminal conduct occurred.
II.
"[A]lthough the State is required to supply specific dates and times regarding an offense where it possesses such information," State v. Henderson , 2006-Ohio-5567, 2006 WL 3028429 ¶ 14 (8th Dist.), "an allowance for inexactitude in the date and time of the offense is permissible, and must be made especially in cases involving the sexual abuse of young children where there are several instances of abuse spread out over an extended time period." State v. Bolling, 2005-Ohio-2509, 2005 WL 1208103 ¶ 36 (2d Dist.) ; see State v. Rucker, 2012-Ohio-185, 2012 WL 171143 ¶ 43 (1st Dist.) ("[i]n many cases involving the sexual abuse of children, the victims are simply unable to remember exact dates, especially where the crimes involve a repeated course of conduct over an extended period of time"). Thus, "[u]nder Ohio law, an indictment for repeated sexual contact *791 need not specify the exact dates of each contact where the state does not possess or cannot reasonably obtain such information." State v. Ambrosia, 67 Ohio App.3d 552, 587 N.E.2d 892 (6th Dist. 1990) (syllabus ¶ 1).
Oftentimes, in such cases, additional information comes into the State's possession as preparations for trial advance, thus, allowing it to more precisely and narrowly identify the date range of the alleged criminal conduct. See, e.g., State v. Barnes, 2011-Ohio-5226, 2011 WL 4790887 ¶ 13 (12th Dist.) ("[o]riginally, the indictment alleged the offense occurred between June 14, 1999 and June 13, 2000. However, through a series of amendments, the state finally narrowed the time range for the offense between March 22, 2000 and September 22, 2000"). In fact, when it can reasonably do so, the State has a duty to narrow the time frame or date range of alleged criminal conduct.
In the case sub judice, however, the STATE OF OHIO seeks not to narrow the date ranges during which the criminal conduct of Mr. NAPIER allegedly occurred, but, instead, to broaden the date ranges of such conduct beyond that specifically set forth within the Indictment. In considering the present effort of the STATE OF OHIO, the fountainhead of felony criminal charges must be considered and, ultimately, respected.
A.
Article I, Section 10, of the Ohio Constitution affords individuals a substantive right that a presentment or indictment of a grand jury is required before the STATE OF OHIO may proceed in criminally prosecuting an individual for allegedly committing a felony:
No person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury; and the number of persons necessary to constitute such grand jury and the number thereof necessary to concur in finding such indictment shall be determined by law.
In fact, without issuance of a proper indictment by a grand jury, a common pleas court is without jurisdiction to proceed in a felony criminal prosecution. State v. Sands, 2014-Ohio-3439, 2014 WL 3891943 ¶ 7 (6th Dist.) ("[t]he felony jurisdiction of the court of common pleas is invoked by the return of a proper indictment by the grand jury of the county"); State v. Holland, 2013-Ohio-4136, 2013 WL 5406742 ¶ 11 (5th Dist.) ("[f]elony jurisdiction of the court of common pleas is invoked upon the return of an indictment by the grand jury").
"The grand jury clause of Section 10, Article I has been part of the Ohio Constitution since 1802. It was adopted in its present form in 1851." State v. Sullivan, 2011-Ohio-2976, 2011 WL 2436890 ¶ 56 (2d Dist.) (Grady, J., dissenting). "This constitutional provision, at the time of its adoption, assumed the grand jury to be an existing institution in Ohio, or, in short, recognized the grand jury as it existed at common law." State ex rel. Doerfler v. Price, 101 Ohio St. 50, 54, 128 N.E. 173, 17 Ohio Law Rep. 488 (1920). Stated otherwise, "[t]he grand jury is a pre-constitutional institution." Roger A. Fairfax, Jr., Grand Jury Discretion and Constitutional Design, 93 CORNELL L. REV. 703, 726 (2008) (quoting United States v. Chanen, 549 F.2d 1306, 1312 (9th Cir. 1977) ). And, as such, "the whole theory of [the grand jury's] function is that it belongs to no branch of the institutional government." United States v. Williams, 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) ; see also Fairfax, Grand Jury Discretion, 93 Cornell L. Rev. at 726 ("[c]ontrary to popular belief, and despite its usual physical location in the courthouse and its reliance *792 on the process and compulsion power of the courts, the grand jury is not a part of the judicial branch. Likewise, the grand jury is not an arm of the Executive even though the prosecutor wields a great deal of (at least perceived) power over the grand jury"). Instead, "the grand jury has been likened to a fourth branch of government." United States ex rel. Underwood v. Genentech, Inc., 2010 WL 3955786, at *2 (E.D. Pa. Oct. 5, 2010).
As the grand jury is a common-law, pre-constitutional institution of both the federal and state governments, the principles relating thereto are comparable. See State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ¶ 40 ("the grand jury provision of the federal Constitution [is] very similar to the grand jury provision of the Ohio Constitution").
It is unnecessary to trace the earliest history of the grand jury, further than to say that it has existed under the common law for centuries.... Its adoption in this country, both in federal and state jurisdictions, has no doubt been upon the theory that it was one of the most substantial and serviceable guaranties against official tyranny, malicious prosecution, and ill-advised and expensive trials, which might generally be avoided if the formal accusation of crime were first made by one's peers, as represented by the grand jury. One's individual rights are those safeguarded against private malice, party passion, or governmental abuse.
Doerfler, 101 Ohio St. at 54, 128 N.E. 173. Thus, since Ohio attained statehood, the people of Ohio have ensured the continuation of the common law rights and protections afforded by requiring indictment by grand jury.
In Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), overruled on other grds., United States v. Miller, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) and United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), the Supreme Court cautioned on the danger of the grand jury and the individual rights protected thereby becoming feckless through the amendment of an indictment:
If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury as a prerequisite to a [defendant's] trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.
Id. at 10, 7 S.Ct. 781. Then, in addressing the ultimate issue of the impact of when an indictment is amended, the Supreme Court in Bain proceeded to hold:
that after the indictment was changed, it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision at the mercy or control of the court or prosecuting attorney, for if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the [defendant] can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court in regard to the prerequisite of an indictment in reality no longer exists.
*793 Id. at 13, 7 S.Ct. 781.[2]
While Bain dealt with an amendment of an indictment so as to narrow the criminal charges, see note 2, supra, in Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court directly addressed the situation when the scope of the charges are broadened by amendment:
[A]fter an indictment has been returned and criminal proceedings are underway, the indictment's charges may not be broadened by amendment, either literal or constructive, except by the grand jury itself...
...
The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.
Id. at 215-16 & 218, 80 S.Ct. 270.
Stirone involved an alleged violation of the Hobbs Act that prohibits, inter alia, the obstruction, delay or affect upon interstate commerce or the movement of any article or commodity in commerce by extortion. While the indictment in Stirone identified the article impacted as being sand, at trial the government offered evidence that steel shipments were also affected. By the trial court allowing the admittance of evidence going to the impact on steel shipments (which were not identified in the indictment), the Supreme Court rejected the contention that this was simply a variance between allegation and proof:
Although the trial court did not permit a formal amendment of the indictment, the effect of what it did was the same... While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance, and then dismissed as harmless error.
Id. at 217, 80 S.Ct. 270. Thus, because the indictment in Stirone charged a specific type of commodity was impacted, the defendant could not be tried (and convicted) upon proof of a different commodity also being impacted:
when only one particular kind of commerce is charged to have been burdened, a conviction must rest on that charge, and not another, even though it be assumed that, under an indictment drawn in general terms, a conviction *794 might rest upon a showing that commerce of one kind or another had been burdened. The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment.
Id. at 218-19, 80 S.Ct. 270 ; see also United States v. Adams, 778 F.2d 1117 (5th Cir. 1985) (in conviction for furnishing and exhibiting a false, fictitious and misrepresented identification to obtain a firearm from a licensed firearms dealer, when indictment alleged falsity in the name on the identification, conviction reversed when proof also offered as to a false residence on the identification).
B.
In seeking to amend the Indictment so as to expand the date ranges on all four counts, the STATE OF OHIO is impermissibly seeking to broaden the scope of the specific factual allegations as found by and presented by the grand jury.
1.
Under the doctrine of separation of powers, proper accord and respect must be afforded to the decision of the grand jury and the specific accusations it has made as to, inter alia, when criminal conduct allegedly occurred. Not only is the grand jury a pre-constitutional institution belonging to no branch of the institutional government, but the Ohio Supreme Court has even acknowledged that "[t]he grand jury in its inquest of crimes and offenses, and in its finding a presentation of indictments to the court of common pleas, does not exercise a judicial function. It only acts as the formal and constitutional accuser of crime and those it believes to be probably guilty thereof." Doerfler, 101 Ohio St. 50, 128 N.E. 173 (syllabus ¶ 1) (emphasis added). Stated otherwise, the grand jury is clearly not part of the judicial branch of government. See United States v. Dionisio, 410 U.S. 1, 16, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (with respect to the guarantee that one cannot be tried for an infamous crime unless on a presentment or indictment of a grand jury, this "constitutional guarantee presupposes an investigative body 'acting independently of either prosecuting attorney or judge' ") (quoting Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) ); Williams, 504 U.S. at 48 & 49, 112 S.Ct. 1735 (explaining "[t]he grand jury's functional independence from the judicial branch" and "the grand jury's operational separateness from its constituting court").
Amongst other things, the rights and protections of the grand-jury found in Article I, Section 10 of the Ohio Constitution"guarantee [ ] the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury." State v. Headley, 6 Ohio St.3d 475, 478, 453 N.E.2d 716 (1983). And while "the Ohio Supreme Court... promulgated the Rules of Criminal Procedure pursuant to the authority conferred by Section 5(B), Article IV of the Ohio Constitution"[3] to promulgate rules governing practice and procedure in all courts of the state, State v. Sims, 2016-Ohio-5316, 2016 WL 4211351 ¶ 7 (7th Dist.), the Ohio Rules of Criminal Procedure are still subservient to the Ohio Constitution and the protections afforded therein with respect to the grand jury. See Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ¶ 27 ("[d]espite the language of Crim.R. 7(D) permitting amendment, an indictment must still meet constitutional requirements"), on reconsideration, *795 119 Ohio St. 3d 204, 2008-Ohio-3749, 893 N.E.2d 169, overruled on other grds., State v. Horner, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26. Thus, consideration must be given as to how far a trial court may allow an amendment of an indictment beyond the specific factual allegations contained therein without violating the independence and role of the grand jury itself as a pre-constitutional institution of the government within neither the executive branch nor the judicial branch.
The doctrine of separation of powers ensures that the separate and independent branches of government are "protected from encroachment by the others, so far that [their] integrity and independence may be preserved." State v. Hochhausler, 76 Ohio St.3d 455, 463, 668 N.E.2d 457 (1996) (quoting S. Euclid v. Jemison, 28 Ohio St.3d 157, 159, 503 N.E.2d 136 (1986) (quoting Fairview v. Giffee, 73 Ohio St. 183, 187, 76 N.E. 865 (1905) ) ). "[U]nder the constitutional scheme, the grand jury is not and should not be captive to any of the three branches." United States v. Chanen, 549 F.2d 1306 (9th Cir. 1977).
As the grand jury is not part of the judicial branch or the executive branch but, instead, essentially a fourth branch of government, see Underwood, 2010 WL 3955786, at *2, the authority of the judicial branch to amend an indictment under Ohio R. Crim. 7(D) must, at a minimum, be circumscribed so as to not encroach upon the prerogatives of that separate branch of government, i.e., the grand jury itself. And not only must concern be given to ensuring the court qua an institution does not encroach upon the authority of the grand jury, but, in addition, "individuals sustain discrete, justiciable injury from actions that transgress separation-of-powers limitations.... [T]he dynamic between and among the branches is not the only object of the Constitution's concern. The structural principles secured by the separation of powers protect the individual as well." Bond v. United States, 564 U.S. 211, 222, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011) ; see also Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. ----, 135 S.Ct. 1932, 1955, 191 L.Ed.2d 911 (2015) ("[j]ust as a branch of Government may not consent away the individual liberty interest protected by the separation of powers, so too an individual may not consent away the institutional interest protected by the separation of powers").
In the case sub judice, to allow the amendment of the Indictment so as to expand or broaden the scope of the specific factual allegations as found by and presented by the grand jury, including the specific dates contained within the Indictment as to when the criminal conduct allegedly occurred, would impermissibly invade the province and prerogative of the grand jury. Thus, consistent with the doctrine and principles of separation of powers, the Motion to Amend Counts 1 to 4 of the Indictment is hereby DENIED.
2.
Separately and independently of the doctrine of separation of powers, the rights afforded to an individual in Article I, Section 10, of the Ohio Constitution also must be considered. "[T]he grand-jury requirement found in Section 10, Article I of the Ohio Constitution does not merely guarantee notice and guard against double jeopardy. Section 10 also requires a grand jury to consider every element of a charged offense before issuing an indictment." State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162 ¶ 14. (Moyer, C.J., dissenting). This constitutional right "guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury, which reports a finding by the grand jury."
*796 State v. Sullivan, 2011-Ohio-2976, 2011 WL 2436890 ¶ 57 (2d Dist.).
In State v. Vitale, 96 Ohio App.3d 695, 645 N.E.2d 1277 (1994), the Eighth District concluded that a defendant was not tried on the same essential facts as alleged in the indictment when the trial court broadened the date of the alleged offense beyond that contained in the indictment, thus, changing the identity of the crime. Vitale involved a felony theft charge that, according to the indictment, occurred "on or about June 14, 1991". Id. at 699, 645 N.E.2d 1277. During a bench trial, the trial court allowed the indictment to be amended so as to change the date of the alleged offense to being from "June 14, 1991 through June 21, 1991 inclusive". In rendering its verdict, the trial court found no crime had been committed on June 14, but found the theft offense had been committed on June 21. The Eighth District concluded that, because it was clear that the grand jury had found probable cause of criminal conduct only on or about June 14, the amendment of the indictment so as to enlarge or broaden the date or dates when the criminal conduct occurred constituted an unwarranted change in the identity of the crime charged. Id. at 701-702, 645 N.E.2d 1277. Accordingly, the ensuing conviction was reversed.
The impermissible amendment in Vitale is in contrast to that which occurred in State v. Gau, 2006-Ohio-6531, 2006 WL 3547368 (11th Dist.). Gau involved a pattern of incestuous sexual assault perpetrated by the defendant on his minor daughter. In Gau, "[t]he original indictment set forth twenty-one counts of rape essentially delineated in four-month time periods" from January 1, 1996, through October 31, 2002. Id. ¶¶ 2 & 9. Following a mistrial, the trial court then allowed an amendment of the indictment so that the number of charges were reduced to seven counts, each covering an approximate one-year period. Id. ¶¶ 9 & 9 n.1. Rejecting a claim that an impermissible amendment occurred, the Eleventh District recognized that the "amendment did not reflect an increased range of dates or the addition of a new date. At all times, [the defendant] was aware that the grand jury had indicted him on allegations of rape beginning with a series of on-going events commencing January 1, 1996 through October 31, 2002. The amendment did not change this." Id. ¶ 10. In contrast, in the case sub judice, the STATE OF OHIO explicitly seeks to increase the range of dates outside of the date range as found by the grand jury.
Finally, consideration must also be given to the nature of the charges involved and, in particular, the leeway already afforded to the STATE OF OHIO with respect to identifying the dates or period of time when sexual offenses involve children of tender years are involved. In State v. Barnecut, 44 Ohio App.3d 149, 542 N.E.2d 353 (5th Dist. 1988), the Fifth District reversed convictions involving sexual conduct with a child of tender years when the trial court allowed the amendment of the indictment so as to broaden the period of time to a completely different period of time outside that set forth in the indictment.
Appellant's due process rights to a fair trial were violated when the trial court allowed the indictment to be amended with regard to the first two counts after the state's case-in-chief was completed. If no evidence is presented that the alleged offenses occurred within the bracketed time frames specified in the indictment, the counts in the indictment relating to those offenses should be dismissed. Any variance of proof outside the parameters of time established by the indictment may constitute a separate offense. This analysis suggests a bright- line *797 test, i.e., that an accused be tried for the crimes alleged in the indictment, and that any evidence outside the time period established in the indictment may constitute a separate offense requiring separate process. This bright-line approach is particularly appropriate in criminal child abuse cases. In such cases, the state is granted greater leeway in charging that the crime(s) took place within a fairly broad time frame. The quidpro quo is that the state prove what it charged.
Id. at 153, 542 N.E.2d 353 (emphasis added). Though it would be more accurate to state that "the quid pro quo is that the state prove what the grand jury charged," the underlying principle is the same. And that principle is applicable in the case sub judice.
Whether couched as a matter of due process (as in Barnecut ) or the constitutional requirement of Article I, Section 10, of the Ohio Constitution that felony criminal charges may only be brought on present or indictment of a grand jury, the conclusion is the same. When a grand jury presents an indictment declaring it found probable cause that criminal conduct occurred and when such criminal conduct occurred, it is contrary to the grand-jury protections afforded to the individual to allow an amendment that is at variance with the pronouncement of the grand jury as contained in the indictment.
III.
An indictment does not constitute a roving commission to the STATE OF OHIO or to the Court to expand or broaden charges of criminal conduct beyond those actually found and identified by the grand jury. As "a sovereign body and a very important agency of the government," United States v. Hall , 153 F.Supp. 661, 665 (W.D. Ky. 1957), the grand jury and its unique role in the criminal process must be afforded full respect from the other branches and agencies of government involved in that process.
The sole entity responsible for making accusation of felony criminal conduct is the grand jury. And it is only upon the accusations actually made by the grand jury, premised upon probable cause, that criminal proceedings may ensue. The request of the STATE OF OHIO to amend the Indictment seeks to enlarge or broaden the date range as to when alleged criminal conduct occurred beyond that found by the grand jury; it goes beyond the essential facts as found by the grand jury. To allow such an amendment would necessitate this court invading the province and prerogative of the grand jury, as well as would subject the defendant to trial beyond the essential facts constituting the offenses for which was charged by the grand jury.
To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.
Russell v. United States, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).
Accordingly, the Court DENIES the Motion to Amend Counts 1 to 4 of the Indictment.
SO ORDERED.

As originally alleged in the Indictment, Count 1 and Count 2 involved the same sexual conduct. Upon the STATE's Motion to Amend Count 1 to correct a clerical error by which the same sexual conduct was indicated for both counts, the Court reviewed in camera the transcript of the proceedings before the grand jury and confirmed that the error in the Indictment was clearly clerical in nature. For that reason and without objection from Mr. NAPIER, the Court granted the requested amendment. See Entry Amending Indictment.

Bain held that when surplusage was stricken from an indictment, "it was no longer the indictment of the grand jury who presented it" and, thus, the district court lacked jurisdiction to enter a criminal conviction and sentence. Bain, 121 U.S. at 13, 7 S.Ct. 781. These legal propositions have since been overruled by the United States Supreme Court. See Miller, 471 U.S. at 144, 105 S.Ct. 1811 ("[t]o the extent Bain stands for the proposition that it constitutes an unconstitutional amendment to drop from an indictment [surplusage], that case has simply not survived. To avoid further confusion, we now explicitly reject that proposition"); Cotton, 535 U.S. at 635, 122 S.Ct. 1781 ("[i]nsofar as it held that a defective indictment deprives a court of jurisdiction, Bain is overruled").
While the precise holding in Bain has been overruled, the underlying legal proposition that an individual is entitled to be tried on the indictment issued from a grand jury is still viable and inherent in the constitutional rights related to grand juries. There is a significant and distinct difference between narrowing the scope of the allegations within an indictment versus enlarging or broadening the scope of the allegations. The former is still within the ambit of the facts as found by the grand jury; the latter clearly goes outside of the facts as found by the grand jury.

Ohio R. Crim. P. 7(D) allows for a trial court to amend an indictment.